**GENERAL BEVERAGE SALES CO.,**
**Plaintiff-Appellee,**

v.

**EAST–SIDE WINERY,**
**Defendant-Appellant.**

**No. 77–1311.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1977.

Decided Jan. 9, 1978.

Eugene O. Gehl, Madison, Wis., Michael I. Miller, Chicago, Ill., for defendant-appellant.

William F. Nelson, Brian E. Butler, Madison, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and COWEN, Judge.*

CUMMINGS, Circuit Judge.

In April 1972, plaintiff, a wholesale distributor of distilled spirits, wines and brandies, sued defendant, its former supplier of wines and brandies, for breaking off their relationship.

* Honorable Wilson Cowen, Senior Judge of the United States Court of Claims, is sitting by designation.

Count I of the April 1973 amended complaint was based on diversity of citizenship and alleged that defendant had breached an October 1, 1970, agreement under which the plaintiff was appointed the exclusive wholesale distributor of defendant's wines and brandies in certain Wisconsin counties. One of the obligations imposed sales performance levels or quotas on plaintiff "conditioned upon the [defendant's] prompt shipment of goods based on orders submitted by the [plaintiff] distributor to the [defendant] company." Plaintiff alleged that during the months of October, November and December 1971 defendant did not promptly ship goods to plaintiff as required by the agreement and yet terminated the agreement on January 25, 1972, for the reason that plaintiff had failed to meet its quotas. In Count I, plaintiff sought $2,500,000 in damages for breach of contract under Wisconsin law.[1]

Count II was brought under Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiff alleged that defendant had violated that statute by limiting its wholesale distributors' sales of defendant's wines and brandies to prescribed geographical sales territories. Defendant assertedly terminated plaintiff on January 25, 1972, because plaintiff refused to confine its sales to its prescribed territories. Plaintiff claimed damages of $2,575,000 (before trebling) under Count II.

Count III of the amended complaint was brought to vindicate defendant's alleged violations of Sections 2(d) and 2(e) of the Robinson-Patman Act (15 U.S.C. §§ 13(d) and 13(e)). According to this Count, from August 1971 to January 1972 the defendant shipped goods more promptly to plaintiff's competitors than to plaintiff and granted them promotional allowances and services and facilities not available to plaintiff. For these violations of the Robinson-Patman Act plaintiff sought $2,500,000 (before trebling).

In its answer to Count I of the amended complaint, defendant denied that it breached the October 1, 1970, agreement with plaintiff, on the ground that said agreement provided for termination of plaintiff for its failure to meet quotas set by that agreement. As to Count II, defendant denied that it had imposed geographical sales territories on plaintiff and its competitors. As an affirmative defense to Count II, defendant charged that (1) plaintiff was *in pari delicto* ; (2) plaintiff was estopped because it had realized and accepted the benefits of the restrictions; and (3) plaintiff's claim was barred by the four-year statute of limitations (15 U.S.C. § 15b). With respect to Count III, defendant denied that it violated Sections 2(d) and 2(e) of the Robinson-Patman Act and reiterated the *in pari delicto,* estoppel and statute of limitations defenses asserted in Count II. Defendant also filed a counterclaim consisting of five causes of action.

In June 1975, the district judge denied plaintiff's motion to strike defendant's affirmative defenses and denied plaintiff's motion to dismiss defendant's second, third, fourth and fifth counterclaims.[2] On July 29, 1976, plaintiff sought to file a proposed second amended complaint[3] but leave was denied a month later because of "no need to amend." The jury trial commenced three weeks thereafter.

Although the district judge initially indicated that he would grant plaintiff's motion for a directed verdict on "that part of Count III which alleges * * * discriminatory promotional allowances" (Tr. 925) and that he would grant a motion for a directed verdict for the plaintiff on what appears to be only the issue of the territorial restrictions in Count II (Tr. 929–933), he eventually declined to grant those motions; we agree with that ultimate resolution. See Part III *infra.* After a 9-day trial, the cause was submitted to the jury which re-

---

1. Count I need not detain us, for the jury only found that defendant had violated the federal antitrust laws as charged in Counts II and III. It did not make a finding on Count I because it was instructed to ignore that Count if it found that defendant violated the antitrust laws.

2. Plaintiff had filed an answer to defendant's first counterclaim.

3. In Count III the proposed pleading added allegations of price discrimination in supposed violation of Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)).

turned the following verdict on the same day:

## "VERDICT

### "Antitrust Questions

"1. Did the defendant East Side Winery violate the antitrust laws of the United States?[4]

"Answer: Yes

"If your answer to question No. 1 is 'No,' then do not answer the following question numbered 2:

"2. Was the violation of the antitrust laws as found by you in question No. 1 a substantial and proximate cause of injury to the plaintiff's business or property?

"Answer: Yes

"If your answer to question No. 2 is 'No,' then do not answer the following question numbered 3:

"3. What sum of money would fairly and reasonably compenstate the plaintiff for the damages it sustained by reason of the violation of the antitrust laws?

"Answer: $500,000

### "Breach of Contract Questions

"(Do not answer questions number 4, 5, and 6 if you have answered questions numbered 1 and 2 'Yes' and have filled in an amount for question No. 3.)

"4. Independent of and outside of the antitrust laws, did the defendant East Side Winery breach, under the laws of the State of Wisconsin, the distributorship agreement between the parties dated October 1, 1970?

"Answer:———————

"If your answer to question No. 4 was 'Yes,' then answer the following question numbered 5:

"5. Was the breach of the distributorship agreement between the parties a substantial and proximate cause of injury to the plaintiff's business or property?

"Answer:———————

"If your answer to question No. 5 was 'Yes,' then answer the following question numbered 6:

"6. What amount of money would fairly and reasonably compensate the plaintiff for the damages it sustained by reason of the defendant's breach of the distributorship agreement?

"Answer: $———————

"7. Is the defendant entitled to receive from the plaintiff the sum of $156,062.48[5] for goods sold and delivered by the plaintiff in or around January 5, 1972?

"Answer: Yes

"(Answered 'Yes' by agreement of the parties.)

"Dated at Milwaukee, Wisconsin, this 7th day of October, 1976.

"Jacqueline Bengala

———————————

Foreperson"

Thereafter, judgment was entered for plaintiff in the sum of $1,307,401.75, plus 7% interest, costs of suit and reasonable attorneys' fees. This judgment consisted of the $500,000 jury verdict for plaintiff, trebled pursuant to 15 U.S.C. § 15 to $1,500,000. This amount was reduced by $156,062.48 pursuant to the jury verdict for defendant on its first counterclaim, plus interest, for a total of $192,598.25. Subsequently, the district judge awarded plaintiff costs of $3,394.50 and attorneys' fees of $127,564.98. We reverse and remand for a new trial.

I. *The Instructions on Territorial Restrictions*

■ About eight months after the conclusion of the jury trial, the Supreme Court handed down *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 holding that territorial restrictions are not illegal *per se* under the Sherman Act, thus overruling *United States v. Arnold Schwinn & Company,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249. We are of

---

4. In its instructions the court defined antitrust laws" as including the Robinson-Patman Act.

5. $156,062.47 was the amount sought (excluding interest) in defendant's first counterclaim.

course required to decide this case on the basis of existing law rather than according to the law that existed at the time of the decision below. *United States v. Schooner Peggy*, 5 U.S. (1 Cranch.) 103, 109, 2 L.Ed. 49; *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476; *Hamling v. United States*, 418 U.S. 87, 102, 94 S.Ct. 2887, 41 L.Ed.2d 590.

In the court below, the case was tried and the jury was instructed based on the law in *Schwinn*. Count II of the amended complaint asserted that defendant's territorial restrictions violated Section 1 of the Sherman Act, and during the trial plaintiff introduced substantial evidence to prove that defendant attempted to impose territorial restrictions and that the distributorship termination resulted from plaintiff's refusal to accede to such. During the course of the litigation, plaintiff's theory was that these territorial restrictions were unlawful *per se* under *Schwinn*.

One of the district judge's instructions to the jury was a *Schwinn*-type instruction that "territorial limitations * * * are per se violations of the antitrust laws." Subsequently he charged the jurors in accord with *Schwinn* as follows:

"In this regard, it is unlawful for a producer to terminate one of its distributors for the reason that the distributor objected to or departed from a plan by the producer to allocate or to restrict the territories in which its products could be sold."

■ Immediately thereafter, the district judge correctly told the jury it is unlawful for a producer to terminate a distributor because of its objections to or departures from the producer's plan to fix or maintain retail prices and incorrectly told the jury that it would also be unlawful for a producer to terminate a distributor for distribut-

ing the products of a competing producer.[6] Then came the following instruction:

"Termination for any one *or* more of these [three] reasons is unlawful." (Emphasis supplied.)

Thus it is seen that the jury may have found defendant guilty of violating the Sherman Act because of territorial restrictions alone, now permissible under the *Continental T.V.* case unless they violate the long-time rule of reason. To avoid a retrial, plaintiff argues first that defendant cannot challenge the *Schwinn* instructions because no objection was made to them at trial and, second, that even if a proper objection had been made the instructions should be upheld because *Continental T.V.* is distinguishable from the facts of this case.

■ The argument that in order to receive the benefit of a change in the law on appeal a party must have objected to the old law at trial would give effect to the Supreme Court's now firm principle that an appellate court should apply the law in existence at the time of appeal only in those rare cases in which counsel had the foresight to predict the change. Cf. *Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 29, 60 S.Ct. 416, 84 L.Ed. 558. Not only would plaintiff's argument thus undermine the clear intention of the Supreme Court but it would also exceed the purposes of requiring an objection at trial: objections are required so that the trial judge can correct any errors, but given the applicable law at the time he gave the instruction the district judge here committed no error and in fact would have been wrong to instruct that *Schwinn* was not the law.[7] Even if, as plaintiff suggests, the appropriate standard is whether defendant's counsel can be faulted for failing to predict the change in the laws, we decline to find fault on the facts of

**6.** Probably because of *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580, plaintiff concedes that this instruction was overly broad (Br. 49), but since defendant gave no ground for its objection to this instruction as required by Rule 51 of the Federal Rules of Civil Procedure, we will not consider this as reversible error. However, it should be cured on remand.

**7.** Although *GTE Sylvania v. Continental T.V., Inc.*, 537 F.2d 980 (9th Cir. 1976; *en banc*), was decided (with four dissenting judges) six months before this trial, *Schwinn* was still the law in the Seventh Circuit and in all the other federal circuits.

this case because of the infrequency with which recent Supreme Court decisions are overruled even when, as here, they have been criticized by some commentators and courts.

Plaintiff's more substantial contention is its attempt to distinguish *Continental T.V.* on two grounds. First, citing *Pitchford Scientific Instruments Corp. v. Pepi, Inc.,* 435 F.Supp. 685 (W.D.Pa.1977), plaintiff argues that *Continental T.V.* is not controlling because it did not change the rule that vertical territorial restrictions are *per se* illegal when they are part of a price-fixing scheme. See *United States v. Bausch & Lomb Optical Co.,* 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024. Although this argument may be a fair reading of *Continental T.V.,* it is inapplicable here. Unlike *Pitchford,* in which the Third Circuit already had found that the evidence in the case supported a finding of price fixing [8] and the district judge found that defendant's territorial restrictions "were part and parcel of a comprehensive price-fixing policy," 435 F.Supp. at 689, this case was not tried on a theory that the restraints "were ancillary to an illegal price fixing scheme" (*Copper Liquor, Inc. v. Adolph Coors Co.,* 506 F.2d 934, 948 (5th Cir. 1975)) and the record is insufficient to support our making such a finding. See Part III, *infra.*

Also based on *Pitchford,* plaintiff's second argument is that *Continental T.V.* is not controlling because it deals only with a " 'location' clause"—a restriction barring a vendor from selling products from locations other than those specified in the agreements—and not with an arguably more anti-competitive restriction (such as here) barring the vendor from selling to buyers in certain locations. Judge Dum-

bauld offered this distinction in *Pitchford* because Justice Powell, the author of the *Continental T.V.* opinion, spoke at the beginning only of the location clause and then went on "to say that the *Continental T.V.* case 'presents important questions concerning . . . *these* restrictions' [Italics supplied]." 435 F.Supp. at 688, quoting *Continental T.V. Inc. v. GTE Sylvania, Inc., supra,* 433 U.S. at 37, 97 S.Ct. at 2551. However, Justice Powell's own express limitation of the Court's holding later in the opinion was not so narrow but rather stated that "we are concerned here only with non-price vertical restrictions," *Id.* at 51 n.18, 97 S.Ct. at 2558 n.18 and the prohibition in *Schwinn* that was overruled by *Continental T.V.* was described as "attempting to restrict a 'retailer's freedom as to where *and to whom* it will resell the products'" (emphasis added). *Id.* at 46, 97 S.Ct. at 2555. Still later in the opinion, Justice Powell expressly rejected the distinction that plaintiff asks us to draw: "The fact that one restriction was addressed to territory and the other to customers is irrelevant to functional antitrust analysis * * *" *Ibid.*; see also *Id.* at 58 n.29, 97 S.Ct. at 2562, n.29. That *Continental T.V.* intended to change the law relating to more than merely location clauses [9] is also clear from the conclusion of the opinion:

"[W]e conclude that the *per se* rule stated in *Schwinn* must be overruled. In so holding we do not foreclose the possibility that particular applications of vertical restrictions might justify *per se* prohibition under *Northern Pac. R. Co.* But we do make clear that departure from the rule of reason standard must be based upon demonstrable economic effect rather than—as in *Schwinn*—upon formalistic line drawing." *Id.* at 58, 97 S.Ct. at 2562.

---

**8.** *Pitchford v. Pepi,* 531 F.2d 92, 98 (3d Cir. 1976).

**9.** Justice White's concurring opinion as well as the opinion of the Ninth Circuit in note 7 *supra* both indicate that this reading of Justice Powell's majority opinion is correct. The concurrence attacks the majority opinion for failing to distinguish *Continental T.V.* from *Schwinn* as the Ninth Circuit did on the ground that the location clause in *Continental T.V.* was less

intrusive than the "system of vertical restraints" in *Schwinn.* 433 U.S. at 58–59, 97 S.Ct. 2562–2563 (White, J., concurring). The majority, however, found no "principled basis for distinguishing *Schwinn* * * *." *Id.* at 46, 97 S.Ct. at 2556. Put simply, if the majority had intended that location clauses were to be viewed differently from other systems of vertical restraints, it could have distinguished *Schwinn* instead of overruling it.

Applying this standard, on the record presented below *Continental T.V.* mandates that the rule of reason initially apply to the vertical restriction at issue here. The trial court's instruction therefore was erroneous and constitutes reversible (though unavoidable) error because a territorial restriction was one of the three grounds listed in the instructions as permitting a verdict for plaintiff under Counts II and III. Because this defect in the instructions affects the substantial rights of the defendant, it cannot be considered harmless error under Rule 61 of the Federal Rules of Civil Procedure. On remand, however, plaintiff should be afforded the opportunity to prove that this particular type of vertical restriction justifies *per se* prohibition "based upon demonstrable economic effect." *Id.* at 59, 97 S.Ct. at 2562.

## II. *The Instruction on Termination*

Defendant also contends that the district judge's attempt to instruct the jury on the duplication of damages resulted in an instruction that improperly allowed the jury to find that the termination of plaintiff's contract occurred for anti-competitive purposes if defendant was guilty of any antitrust violation. Initially, during an in-chambers conference, in response to the district judge's concern that the jury might award plaintiff damages both for breach of contract and for termination in violation of the Sherman Act, plaintiff tendered to the court an instruction which is substantially identical to part of the instruction eventually given. As finally given, the instruction read:

> "Now if you find that the defendant has violated the antitrust laws, if you do find that, then, in effect, you have found that the termination of the plaintiff's contract occurred for anticompetitive purposes.
>
> *     *     *     *     *     *
>
> "To put it another way, if the antitrust laws are violated, then it is implied that that contract was breached for anticompetitive purposes."

Despite his participation at the conference in formulating the instruction, just before the jury retired defense counsel first objected to this instruction for its failure to tell the jurors that "before you determine that the termination of the distributorship contract was in violation of the antitrust laws, you must find that the intended effect of such termination has created unreasonable restraint of trade" (Tr. 1193–1194; see also Tr. 1196).

In the opinion accompanying the order denying defendant's motion for a new trial, the trial court held that defendant had waived this objection by failing to raise it properly under Rule 49(a) of the Federal Rules of Civil Procedure. However, the waiver provision of Rule 49(a) is inapplicable here because it applies when, in submitting the issues to the jury, the court "omits any issue of fact raised by the pleadings or by the evidence." Defendant's objection did not request the introduction of a new factual question or even the alteration of the verdict form but rather requested a clarifying instruction about the form and is therefore governed by Rule 51. Cf. *McDonnell v. Timmerman*, 269 F.2d 54, 58 (8th Cir. 1959). Indeed plaintiff recognizes that Rule 51 governs (Br. 45, 47) and does not attempt to justify the district judge's ruling under Rule 49(a) (cf. Br. 39, 48).

Under Rule 51 there is no argument that defendant's objection was not timely, but plaintiff does argue that the defendant is bound by the instruction because the defendant participated in the conference where it was formulated. This argument, however, was rejected by the Fifth Circuit in *Alabama Great Southern Railroad Co. v. Johnson*, 140 F.2d 968, 972 (5th Cir. 1944), and the result reached in that case has been accepted by the principal commentators. See 9 Wright and Miller, *Federal Practice and Procedure* § 2558; 5A Moore's *Federal Practice* ¶ 51.05. Plaintiff further argues that when read in context the instruction could not be interpreted by the jury to require a finding of anti-competitive termination if they found defendant guilty of any antitrust violation. If the challenged instruction were in the middle of several contrary instructions this argument

might have merit, but since this instruction came at the tail-end of the court's charge, it cannot be said that it was cured by prior correct instructions.

Even plaintiff does not argue that the instruction as given properly states the law. As defendant's counsel put it, the basis for the objection is that under such an instruction, "the jury could find under the evidence that a violation of the antitrust laws occurred without also finding that the contract was terminated for anti-competitive reasons" (Defendant's App. 53). The trial court conceded this interpretation was possible in its decision denying defendant's motion for a new trial (Defendant's App. 22; Plaintiff's Br. 39). Although improper purpose need not be proven if the specific offense charged is *per se* illegal, when the specific offense is not illegal *per se* we have been presented with no authority for conclusively implying improper purpose only from the fact that possibly *per se* offenses are also charged. See *Copper Liquor, Inc. v. Adolph Coors Co., supra.* At the next trial, such an instruction must be omitted and the verdict form should be redrawn to avoid the problem.

III. *Miscellaneous Contentions of Parties*

Despite the fact that it never moved at trial for a directed verdict on all its claims, apparently recognizing the errors in the jury instructions discussed *supra*, plaintiff argues that the jury verdict is unnecessary to support the judgment because plaintiff was entitled to a directed verdict that the defendant violated the antitrust laws on each of the following issues: defendant's resale price restrictions, defendant's termination of plaintiff and defendant's discriminatory price allowances.

[11] Given the strict standards that must be met before a case can be taken away from the jury (see *Hohmann v. Packard Instrument Company, Inc.,* 471 F.2d 815, 819 (7th Cir. 1973)), a directed verdict on the resale price restrictions issue would have been improper if requested because plaintiff's case (apart from evidence that

must be viewed as barred by an October 1, 1970, release, at least in the absence of a contrary finding below) is based not on defendant's insistence upon any specific prices but rather on inferences that a jury might draw from language in generalized pricing discussions and from certain possibly unrelated actions by the defendant such as the monitoring of advertisements and invoices. Such inferences cannot support a directed Sherman Act verdict on a resale price maintenance theory.

▬ Nor would a directed verdict have been proper if requested on the question whether the termination of plaintiff violated Section 1 of the Sherman Act. A jury reasonably could have found that the termination was in response to a declining sales record even though plaintiff remained defendant's largest single distributor, or in response to plaintiff's selling brands of competing suppliers. Because the purpose of the termination is unclear and because plaintiff's evidence of the effect of defendant's conduct on an individual distributor is not conclusive on the issue of anti-competitive effect (see *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510), the termination issue was properly left to the jury. We also agree with the district judge's decision not to grant a directed verdict on the Robinson-Patman Act issues because certain defenses are available under Sections 2(d) and 2(e) thereof and plaintiff would still have to show damages and causal connection.

Defendant asserts that the instructions did not discuss anti-competitive purpose, causal connection and conduct tainted by a contract and conspiracy, but our study of the court's charge indicates that it was replete as to each such subject. We imply no view on contentions of the parties not expressly discussed in this opinion.

Plaintiff did not cross-appeal as to the $192,598.25 judgment against it on defendant's first counterclaim, so that said judgment must stand. The judgment for plaintiff is reversed and remanded for new trial.