981 F.2d 1251
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LIVINGSTON CHEMICALS, INCORPORATED, Plaintiff-Appellee,
v.
PERMVIRO SYSTEMS, INCORPORATED, Defendant-Appellant.
 No. 92-1063.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 1, 1992
Decided: December 21, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-91-532-A)
 ARGUED: David P. Durbin, Jordan, Coyne, Savits & Lopata, Washington, D.C., for Appellant.
 Donald R. Dinan, O'Conner & Hannan, Washington, D.C., for Appellee.
 ON BRIEF: Laura J. Holland, Jordan, Coyne, Savits & Lopata, Washington, D.C.; Robert E. Scully, Jr., Susan A. Richards, Rees, Broome & Diaz, Vienna, Virginia, for Appellant.
 John J. McDermott, Gary C. Adler, O'Conner & Hannan, Washington, D.C., for Appellee.
 E.D.Va.
 Affirmed.
 Before WILLIAMS, Circuit Judge, BUTZNER, Senior Circuit Judge, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 OPINION
 
 1
 Permviro Systems, Inc., appeals a judgment entered on a jury's verdict for compensatory and punitive damages in favor of Livingston Chemicals, Inc., on charges of tortious interference with existing and prospective business relationships as well as business and product disparagement. Permviro alleges that there was insufficient evidence upon which a reasonable jury could have found for Livingston on either claim. Permviro also claims that there was no clear and convincing proof of the actual malice necessary to award punitive damages under North Carolina law and that the law of North Carolina governing the award of punitive damages deprives it of the due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution.
 
 
 2
 We conclude that the evidence was sufficient to support the verdict in favor of Livingston on all claims. Because Permviro failed to raise its due process objection until after the jury returned its verdict, Permviro is precluded from raising the issue on appeal.
 
 
 3
 * In 1982, Dr. Larry Livingston formed Livingston Chemicals, Inc., to investigate the use of ethylene gas as a curing agent for tobacco, fruits, and vegetables. The next year, Livingston began development of a process for introducing a mixture of air and ethylene into a tobacco curing chamber, allowing tobacco to be cured quickly without producing toxic by-products. Livingston, as required by federal law, applied for permission from the Environmental Protection Agency (EPA) to distribute ethylene gas and obtained a registration label from EPA in 1984 for "Livingston's Tobacco Curing Gas." This label contained instructions, which admittedly were ineffective, for a method of using ethylene gas to cure tobacco. Livingston kept experimenting with mixture concentrations and temperatures, however, eventually arriving at an effective method. Livingston at this point applied for a patent for his process of curing tobacco with ethylene, and the Patent Office granted him a patent on June 6, 1989. This patent described a different application process from that depicted on the EPA label, but Livingston subsequently applied for a revised label with new instructions.
 
 
 4
 The success of Livingston's business operations was largely dependent upon its contractual relationship with Cardinal Chemicals, the distributor of Livingston's Tobacco Curing Gas. In February, 1987, Livingston and Cardinal entered into a contract which gave Cardinal the exclusive right to sell the Livingston product in North Carolina, South Carolina, and Virginia. In return, Cardinal promised to use its best efforts to promote the sales of Livingston's Tobacco Curing Gas as well as to educate its customers and employees on the proper method of using Livingston's method to cure tobacco.
 
 
 5
 Towards the end of May, 1989, Permviro began to market ethylene for curing in five southeastern states, including those where Livingston's product was already sold. The EPA label on Permviro's ethylene contained substantially the same instructions for application and use as did Livingston's first label. These instructions had proved to be ineffective in curing tobacco; therefore the only practical means of using Permviro's product was to use Livingston's patented method. Permviro itself conducted neither experiments nor research on tobacco curing methods with ethylene, yet it continued to market its product to Livingston's customers who had received from Cardinal or Livingston instructions on how to use Livingston's patented method and product. Also, Permviro told some of its customers to use its gas just like Livingston's gas was used.
 
 
 6
 About the same time that Permviro started to sell its ethylene product, its president, Jack Stokes, began a series of telephone calls to Richard Maddux, Cardinal Chemicals' purchasing agent. Maddux testified that these calls seemed to have no purpose other than to denigrate Livingston, his company, or his patent. Stokes initially told the agent that Livingston could not obtain a patent in its process, although Livingston had, in fact, obtained just such a patent. When confronted with the existence of Livingston's patent, Stokes stated that it was "not worth the paper it was written on." This statement also proved to be unfounded, as re-examination of Livingston's patent demonstrated. Stokes placed at least six of these telephone calls, all of which, Maddux testified, involved derogatory statements about Livingston "personally or his business or his patent or his label or something." In one call, Stokes threatened to sell Permviro gas at such a low price that Livingston could not make enough money to sue Permviro.
 
 
 7
 As a result of the calls from Stokes, Cardinal re-evaluated its plans for the future of its business relationship with Livingston. Due to doubts instilled by Stokes about the viability of Livingston's patent, Cardinal reduced its order for 60,000 pounds of ethylene for 1989. Additionally, Cardinal ceased aggressive promotion of Livingston's ethylene product and method as a result of Stokes' repeated telephone calls.
 
 
 8
 After the Patent Office, at Permviro's request, re-examined Livingston's patent and upheld its validity, Livingston brought suit, claiming damages for tortious interference with existing and prospective business relationships, business defamation and product disparagement, basing jurisdiction on 28 U.S.C. § 1332 (diversity of citizenship). Permviro filed a counterclaim alleging violations of the Lanham Act and other claims. At a three-day trial, both Livingston and Permviro submitted detailed sales figures to support their conflicting claims for damages. Livingston projected damages to his company of $216,200 for 1989 and $248,000 for 1990. The jury found in favor of Livingston, awarding it $300,000 in compensatory damages and $170,000 in punitive damages. After the district court denied Permviro's posttrial motions and entered final judgment, this appeal followed.
 
 II
 
 9
 Permviro contends that the verdict in favor of Livingston is not supported by the evidence. It asserts that Stokes' statements to Cardinal did not impugn the character of Livingston's business or product and that the evidence supporting the claim of intentional interference with contract by Stokes was deficient as a matter of law.
 
 
 10
 When reviewing a district court's denial of judgment n.o.v. or for a new trial, we must decide whether "viewing the evidence in the light most favorable to the party opposing the motion, a jury could reasonably find in favor of that party." Defender Indus., Inc. v. Northwestern Mut. Life Ins. Co., 938 F.2d 502, 505 (4th Cir. 1991). "In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury." 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2524, at 543-44 (1971). This standard is appropriately deferential to the judgment of the trial court and jury, while allowing correction in the rare instances when the evidence does not support the verdict.
 
 
 11
 This case is not one of the exceptions. The district court, in denying Permviro's motions for directed verdict and for judgment n.o.v., determined that there was ample evidence presented to the jury to support the verdict for Livingston. We see no reason to depart from this conclusion.
 
 
 12
 The evidence disclosed that Stokes made disparaging statements about Livingston's business to the Cardinal Chemicals purchasing agent, Maddux, who testified that, as a direct result of his conversations with Stokes, Cardinal reduced a 60,000 pound order, and de-emphasized their marketing of Livingston's product.
 
 
 13
 Under North Carolina law, which both parties acknowledge is applicable, a corporation is allowed to recover damages for defamation when it is "injured in its credit, in its business good will, or in its relations with its employees." R.H. Bouligny, Inc. v. United Steelworkers of America, 270 N.C. 160, 168, 154 S.E.2d 344, 352 (1967).
 
 
 14
 The standards for establishing a product disparagement claim, on the other hand, have never been precisely determined by the North Carolina courts. However, in the analogous cause of action for a slander of title, North Carolina law is quite clear. Such a statement is defamatory if it is false, maliciously made, and if it results in a pecuniary loss for the subject of the assertion. See Selby v. Taylor, 57 N.C. App. 119, 120, 290 S.E.2d 767, 768 (1982) (citation omitted).
 
 
 15
 Livingston argued, and the jury found, that Stokes' conversations with Cardinal's agent caused Livingston direct pecuniary loss, as well as a loss of business goodwill between Livingston and Cardinal. Both the reduction of the 60,000 pound order and the lessening of Cardinal's marketing efforts were a direct result of Stokes' statements. A reasonable jury could readily find that, absent a valid defense, Stokes' statements regarding Livingston's product and patent defamed both product and producer under North Carolina law.
 
 III
 
 16
 Permviro also asserts that Livingston did not present sufficient evidence to support a claim of tortious interference with a contractual relationship. Under North Carolina law, five elements are considered when weighing such a claim: (1) whether a valid contract exists between the plaintiff and a third party; (2) whether the defendant has knowledge of the contract; (3) whether the defendant intentionally induced the third party not to perform his contract with the plaintiff; (4) whether such action by the defendant was without justification; and (5) whether the defendant's actions caused the plaintiff actual damages. Childress v. Abeles, 240 N.C. 667, 674-75, 84 S.E.2d 176, 181-82 (1954). Additionally, North Carolina recognizes a plaintiff's ability to claim tortious interference with a prospective business relationship if the elements for interference with an existing contract are present and the business expectancy would have been entered into but for the interference of the defendant. See Spartan Equip. Co. v. Air Placement Equip. Co., 263 N.C. 549, 557, 140 S.E.2d 3, 11 (1965).
 
 
 17
 Permviro contends that it did not induce Cardinal not to perform in its contract with Livingston, that its action was not unjustified, and that, regardless, no actual damages arose from Stokes actions. These contentions are without merit.
 
 
 18
 There is abundant evidence that Stokes' misrepresentations to Cardinal's purchasing agent led directly to Cardinal's decision to reduce their 60,000 pound order and to cease using their best efforts to promote Livingston's Tobacco Curing Gas, as required by their contract.
 
 
 19
 The jury was presented with Livingston's business records and other information which depicted the actual damage incurred by Livingston due to Cardinal's reaction to Stokes' calls. These damages were calculated with a rational approach which comports with North Carolina's mandate that damages be proved with reasonable certainty. Olivetti Corp. v. Ames Business Sys., Inc., 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987). Livingston also provided the jury with the raw data underlying its conclusions about the company's loss due to Stokes' actions. A jury reasonably could have arrived at the figure for compensatory damages based on the relevant information provided by Livingston.
 
 IV
 
 20
 Permviro asserts that it was not fully able to put on its defense of truth regarding Stokes' statements on the validity of Livingston's patent. A review of the record reveals, to the contrary, that Permviro was allowed to present this defense, based on its assertion that Stokes' believed Livingston's prior use of the ethylene process invalidated its patent. The evidence which sought to challenge the validity of the patent, rather than merely to prove Stokes' belief in its invalidity, was properly excluded. Invalidity of a patent because of prior use is an affirmative defense that must be raised in the pleadings. See 35 U.S.C. §§ 282, 102(b); Fed. R. Civ. P. 8(c); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1271, at 438-39 (1983). Because Permviro did not plead invalidity, the court did not err. The court allowed Permviro wide latitude to show that Stokes in good faith thought the patent was invalid. Pursuant to the statute and the rule governing pleading of prior use, it properly excluded evidence directly challenging the validity of the patent.
 
 
 21
 Permviro also challenges the district court's exclusion of two documents written by an attorney whom Livingston hired in the summer of 1989 to look into the potential for legal action against Permviro. These documents were properly excluded as inadmissible hearsay not falling under the exceptions found in Fed. R. Evid. 801(d)(2)(B) or 803.
 
 
 22
 Although Permviro maintains that Livingston adopted the attorney's statements, thus making them non-hearsay under Rule 801(d)(2)(B), the evidence offered on this point (a reply letter stating both agreement and disagreement) is equivocal. In his reply letter, Livingston states: "Please let me say that I have no hard feelings toward you. I agree with a lot of what you are saying; however, I don't think you have taken into context Stokes' aggressive approach and the scheming that he has done and is doing." Such a declaration is hardly a manifestation of an adoption or a belief in the truth of the attorney's conclusions sufficient to meet the standards for admission under Rule 801(d)(2)(B); if anything, it is a disavowal. The district court correctly excluded this letter as hearsay.
 
 
 23
 Not only are the documents hearsay but the opinions expressed in the attorney's letter were irrelevant. The district court, in ruling the attorney's letter irrelevant, noted that Permviro was attempting to use Livingston's former lawyer, not present in the courtroom, "as an expert witness to comment on whether or not these facts presented constitute a cause of action." The district court was well within its discretion in excluding the documents both as hearsay and as irrelevant under Fed. R. Civ. P. 402.
 
 
 24
 The district court also ruled that the admission of the documents, even if relevant and adopted by Livingston, would be far more prejudicial than probative, thereby barring their admission under Fed. R. Evid. 403. The admission or exclusion of evidence under Rule 403 is within the discretion of the district court, and we will not overturn such a decision absent extraordinary circumstances. See United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990); United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980). No such circumstances existed here.
 
 
 25
 Becher v. Contoure Laboratories, 279 U.S. 388 (1929), upon which Permviro relies, provides no controlling precedent pertaining to the issue of the validity of Livingston's patent. In that case there was no deficiency in the pleadings. When all the valid grounds for excluding the evidence are considered, we can say with assurance that the district court did not abuse its discretion by excluding it.
 
 V
 
 26
 In its motion for judgment n.o.v. and in the alternative for a new trial, Permviro assigns error to the punitive damages award on the grounds that the North Carolina statutory scheme under which it was awarded deprived Permviro of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. It relies on Mattison v. Dallas Carrier Corp., 947 F.2d 95 (4th Cir. 1991), which in turn is based largely on Pacific Mut. Life Ins. Co. v. Haslip, 111 S. Ct. 1032 (1991).
 
 
 27
 Because Permviro did not raise this constitutional issue in its pleadings or during the trial, it cannot raise this issue on appeal. Wackenhut Applied Technologies Center, Inc. v. Sygnetron Protection Systems, Inc., F.2d, n.6 (4th Cir. 1992); United States v. Hirschfeld, 964 F.2d 318, 321 (4th Cir. 1992). Permviro's failure to raise the issue in its motion for a directed verdict during the trial precludes its reliance on the issue in its motion for judgment n.o.v. To raise an issue on judgment n.o.v., a party must preserve that right by first making an appropriate motion for directed verdict. Fed. R. Civ. P. 50(b); Austin-Westshore Constr. Co. v. Federated Dep't Stores, Inc., 934 F.2d 1217, 1222 (11th Cir. 1991). "The requirement of a proper directed verdict motion as foundation for a motion for judgment n.o.v. under Fed. R. Civ. P. 50(b) is not a mere technicality; it serves vitally important interests in the fair conduct of litigation." Miller v. Premier Corp., 608 F.2d 973, 979 n.3 (4th Cir. 1979). Without a proper motion for directed verdict, the opposing party is deprived of an opportunity to respond before the jury, thus infringing its Seventh Amendment rights. See Acosta v. Honda Motor Co., 717 F.2d 828, 831 (3d Cir. 1983).
 
 
 28
 Nor can Permviro ask us to declare the district court's jury instructions on punitive damages to be unconstitutional when it raised no objection to the instructions at any time before the jury returned its verdict. Indeed, Permviro itself proffered the instructions on damages. Failure to object to jury instructions when delivered precludes a party from objecting to them on appeal. Fed. R. Civ. P. 51; Waters v. Massey-Ferguson, Inc., 775 F.2d 587, 590-91 n.2 (4th Cir. 1987).
 
 
 29
 Permviro argues that it could not object to the jury instructions, as they accurately represented the law in North Carolina at the time. Permviro contends along similar lines that it must be permitted to take advantage of the exception that allows an issue to be asserted initially on appeal when there has been a change in the law pending appeal.
 
 
 30
 See, e.g., General Beverage Sales Co. v. East-Side Winery, 568 F.2d 1147, 1152 (7th Cir. 1978).
 
 
 31
 These contentions are unavailing in this case because there was no change in the law pending appeal. The Supreme Court decided Haslip, the leading case on this subject, seven months before the trial of this case, and the question of the application of the due process clause to punitive damages had been for many months a widely debated issue.
 
 
 32
 Failure to object to an instruction or address an issue in a motion for a directed verdict does not preclude raising the issue on appeal when the district court's error has resulted in a fundamental injustice. Austin-Westshore Constr. Co. v. Federated Dep't Stores, Inc., 934 F.2d 1217, 1223 (11th Cir. 1991); Spell v. McDaniel, 824 F.2d 1380, 1399 (4th Cir. 1987). In Wackenhut, # 6D6D 6D# F.2d at n.6, the avoidance of fundamental injustice did not require addressing initially on appeal whether the due process clause precluded an award of punitive damages. Similarly we find in this case no showing of fundamental injustice. The award of punitive damages is less than the verdict for compensatory damages. In comparison, the punitive damage award in Haslip, 111 S. Ct. at 1046, that was four times as large as the compensatory award did not offend the due process clause. In agreement with the district court, we find the evidence sufficient to sustain the verdict for punitive damages.
 
 
 33
 Quite apart from its due process claim, Permviro contends that the evidence of malice was insufficient to submit the issue of punitive damages to the jury. It relies on the defense of advice of counsel to show that Stokes did not speak maliciously when he told Maddux that Livingston's patent is "not worth the paper it was written on."
 
 
 34
 The difficulty with Permviro's argument is that its defense of advice of counsel cannot under the circumstances exonerate it as a matter of law. The defense presented a factual matter for the resolution of the jury under proper instructions to which no objection was taken. Livingston's patent is for a process. Its novelty and utility lie in its claims of the proper means and method of using ethylene gas to cure tobacco. Livingston readily conceded that use of ethylene without applying Livingston's process would not infringe the patent, but Livingston introduced evidence that use of ethylene without applying its process was ineffective. Livingston also introduced evidence that Permviro told its customers to use its product just like Livingston's gas was used.
 
 
 35
 Permviro's reliance on its consultation with Stokes' son did not afford it a defense as a matter of law because the son was not practicing law, he had an interest in Permviro's business, and most importantly he was not an expert in the field of patents. Stokes' son consulted a patent attorney who allegedly supported his view that Permviro should continue marketing ethylene. Permviro, however, never called the patent attorney as a witness to support its defense. In fact, since Stokes denied telling his customers that they should use Livingston's process, it is highly unlikely that he revealed to the patent attorney what he was doing.
 
 
 36
 In agreement with the district court, we conclude that there was ample evidence to support the jury's award of punitive damages.
 
 AFFIRMED