**Leo J. RENGERS, Plaintiff-Appellee, Cross-Appellant,**

**v.**

**WCLR RADIO STATION, A DIVISON OF BONNEVILLE INTERNATIONAL CORPORATION,**
**Defendant-Appellant, Cross-Appellee.**

**Nos. 86–1548, 86–1622, 86–1794 and 86–1865.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1986.

Decided Aug. 4, 1987.

See also, D.C., 661 F.Supp. 649.

Stuart Smith, Gordon & Glickson, P.C., Chicago, Ill., for defendant-appellant cross-appellee.

Peter R. Meyers, Meyers & Meyers, Chicago, Ill., for plaintiff-appellee cross-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Defendant WCLR Radio Station appeals from a denial of a JNOV motion and a jury verdict in favor of plaintiff Leo Rengers, a former WCLR disc jockey. The jury affirmatively answered two special interrogatories, finding that defendant's termination of plaintiff violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and that the violation was willful. After resolving various post-trial motions, final judgment was entered on March 6, 1986, and the notices of appeals and cross-appeals were timely filed thereafter.

In an appeal from an adverse jury verdict and a denial of a JNOV motion we of course must determine whether there is a reasonable basis in the record for the jury verdict. *U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1369 (7th Cir.1985). We consider "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom

the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). The evidence here, when viewed in a light most favorable to plaintiff, reveals the following: Plaintiff resides in Glencoe, Illinois, and defendant WCLR Radio Station has its place of business in Skokie, Illinois. Plaintiff was hired in November 1970 as a staff announcer for WCLR. He was terminated on April 15, 1980, because of alleged tardiness and "dead air," that is, periods when no sound is being transmitted over the air. At the time of his discharge, he was 51 years old and had been employed longer than any other WCLR announcer; he was replaced by a new employee aged 33. WCLR claimed at trial that the discharge was due to plaintiff's unsatisfactory job performance and not his age.

Plaintiff worked on various shifts as a disc jockey and announcer during his employment with WCLR. From 1970 to 1975 WCLR featured a "beautiful music" format that mainly consisted of instrumental music designed for easy listening. During this period plaintiff was a proficient and well-respected disc jockey. In 1975 WCLR attempted to reverse its sagging ratings by changing to a "middle of the road" format that featured adult contemporary songs by artists such as the Beatles, the Carpenters, Frank Sinatra, and Barbra Streisand and was targeted to a younger audience. The prominence and on-air time of the announcers grew. To implement this new strategy, WCLR hired a 29–year-old program director. The station retained plaintiff, who was 47 at the time, but fired the three other announcers over age 40. Plaintiff's evidence supported a conclusion that the three were fired not on account of their ability but because their age was not compatible with the new direction in which WCLR was moving. WCLR then proceeded to hire four new on-air announcers over 40—a sportscaster, meteorologist, and two weekend announcers—but only one remained in the employ of WCLR at the time of plaintiff's discharge and he soon left

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

after WCLR imposed on him two drastic cuts in his salary, an involuntary assignment to the midnight shift, and the imposition of an additional day of work. Plaintiff produced expert testimony to the effect that WCLR's format change in 1975 was intended to attract a younger audience and that radio stations generally hire disc jockeys in the targeted age group. The plaintiff also showed through expert testimony and WCLR's own documents that in early 1980 WCLR decided to target an even younger audience during plaintiff's on-air nighttime slot, namely persons aged 25 to 34. The district court concluded in denying WCLR's JNOV motion that "the unmistakable result of its post–1975 hiring practices was that, by the end of 1981, it did not employ a single staff announcer over the age of 40. The jury was entitled to conclude that this disparity was neither merely 'coincidental' ... nor simply a byproduct of the natural age progression of the labor market." Defendant's App. 25–26 (footnote omitted).

Plaintiff produced evidence supporting a reasonable inference that his firing resulted from this systematic age discrimination. After the 1975 change in management and move to a "youth" image for the station, plaintiff's photograph was not included in WCLR's promotional documents containing pictures of all the other WCLR disc jockeys. From then on he did not receive any more "production work," i.e., taping commercials or public service announcements, nor was he scheduled to make personal appearances at shopping centers to earn extra money, unlike the younger WCLR disc jockeys. As for defendant's proffered justification of unsatisfactory job performance, plaintiff did not deny that in 1977 his job performance declined and three memoranda critical of his work were put in his file. He did show that thereafter his performance again improved to acceptable levels. In early 1979 he was placed on probation but then he worked diligently to improve and was never reprimanded again. He received no formal disciplinary notices in the year prior to his dismissal and the program director who fired him admitted at trial that his performance during that year had not warranted a reprimand. In fact, in November 1979, about five months before his termination, plaintiff received a favorable evaluation from an outside consultant hired by WCLR that concluded that he "did a good job of representing the WCLR format." Plaintiff received merit increases every year but 1977, although his raise in 1979 was referred to as a cost of living adjustment. In sum, there was more than enough evidence for the jury to conclude that the proffered justification of unsatisfactory job performance was a pretext and that plaintiff was actually fired because at 51 he was considered too old to attract the recently decided upon nighttime target audience of persons 25 to 34 years of age.

The Equal Employment Opportunity Commission was unable to settle his age discrimination complaint, causing plaintiff to file this suit seeking reinstatement, back pay, and various benefits. The jury returned a verdict of $97,433 for plaintiff. This amount was doubled under 29 U.S.C. § 626(b) by the district court in view of the jury's finding that WCLR's violation of the ADEA was willful. In addition to the award of $194,866, the district court awarded $5,000 for lost investment benefits and health insurance premiums, a monthly pension that defendant would have received but for the illegal firing, and attorney's fees and costs.

In August 1985, Judge Decker handed down a lengthy memorandum opinion and order disposing of numerous contentions raised by the parties. Defendant's App. 1–47. In that opinion, the district judge carefully reviewed the evidence and decided that a fair and impartial jury could have found from the evidence that age was a determining factor in plaintiff's discharge, so that judgment notwithstanding the verdict was unjustified. Next the district court summarized portions of the evidence before determining that the jury could have reasonably concluded that WCLR willfully terminated Rengers, so that doubling the damages portion of the verdict was proper under the liquidated damages provision of the ADEA (29 U.S.C. § 626(b)). Judge Decker then decided that a new trial would

not be justified because the jury's verdict was not contrary to the clear weight of the evidence, the damages were not excessive, and there were no substantial errors of law. Consequently, WCLR's motion for a new trial was denied.

In the same opinion, the court disposed of various claims of plaintiff. First of all, reinstatement was denied because of continuing animosity between plaintiff and the WCLR management. Plaintiff was awarded, however, prospective pension benefits and lost insurance benefits whose amount was to be determined later. Plaintiff's attorneys requested $9,203.75 attorney's fees as a sanction for WCLR's destruction of certain logger tapes that would have been useful for the trial. See Fed.R.Civ.P. 37(b)(2). This amount was cut to $3,491.50 on the grounds that a proper hourly rate for plaintiff's chief counsel was $110 instead of $125 and because plaintiff's attorneys had spent unreasonable amounts of time on that matter. Although plaintiff's attorneys requested $155,018.38 in fees for representing the prevailing party and also $1,633.10 for costs, the court held off deciding that issue to permit WCLR an opportunity to respond.

In a subsequent opinion, dated January 2, 1986, Judge Decker refused to award plaintiff front pay sought as an alternative remedy in view of the denial of reinstatement.[1] Front pay was refused on the ground that the damages award was substantial. Defendant's App. 78–84.

Another opinion, dated April 15, 1986, was devoted to plaintiff's attorneys' final request for $130,921 in attorney's fees plus a 50% multiplier, or a total of $196,381.51, plus $2,175.74 costs. The district judge refused to employ a multiplier and also reduced the fees claimed by employing a lower hourly rate (again $110 instead of $125) and permitting fewer compensable hours. Therefore attorney's fees of $62,934.75 were allowed, plus $1,633.10 costs. Defendant's App. 63–75. The court had earlier denied on March 3, 1986, plaintiff's request to serve interrogatories on WCLR's counsel to ascertain their fees. Plaintiff's App. 1–3.

Defendant WCLR's appeal argues for a judgment notwithstanding the verdict and attacks the finding of willfulness. Defendant also assails various trial rulings of the district judge and claims there was no evidence to support the $97,433 verdict. In addition, the defendant claims that the attorney's fees sanction for its inability to produce certain logger tapes was unwarranted and that the other attorney's fees for plaintiff were unwarranted because he should not have prevailed.

Plaintiff has cross-appealed from (1) the reduced costs and attorney's fees, (2) the rulings of no reinstatement and no front pay, and (3) the allowance of only $3,491.90 for attorney's fees as a sanction instead of the $9,203.75 sought.

■ Since Judge Decker has ably answered the parties' present contentions in four of his six opinions in this case,[2] we adopt them as our own. Judge Decker correctly held that there was sufficient evidence to uphold the jury's conclusion that WCLR discharged plaintiff in violation of the ADEA. To succeed in his ADEA claim, plaintiff had the burden of proving "not that age was the sole factor motivating the employer to discharge him but that age was a 'determining factor,' in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *La*

---

**1.** Front pay is an award for future lost earnings and is sometimes granted where reinstatement is infeasible. See *Maxfield v. Sinclair International,* 766 F.2d 788, 795–796 (3d Cir.1985), certiorari denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); see also *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118–119 (7th Cir.1986) (in an ADEA suit, front pay is an available remedy within the discretion of the district court), certiorari denied, — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

**2.** These four opinions are reproduced in defendant's Appendix (1–47, 63–75, 78–84) and in plaintiff's Appendix (1–3). The other two opinions are reproduced in defendant's Appendix (at 53–61 and 88–95) but do not deal directly with the present arguments.

*Montagne v. American Convenience Prods.*, 750 F.2d 1405, 1409 (7th Cir.1984); see *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 17 (7th Cir.1987). Plaintiff can meet this burden by the "indirect method," requiring him first to establish a prima facie case, which he did: (1) he was in the protected class, (2) he provided substantial evidence that his job performance was sufficient to meet his employer's legitimate expectations, (3) despite his satisfactory performance he was discharged, and (4) the employer sought a replacement for him. *Graefenhain*, at 17 and n. 5; *La Montagne*, 750 F.2d at 1409. The burden of production then shifted to WCLR to articulate some legitimate non-discriminatory reason for the discharge, which it did: plaintiff's alleged unsatisfactory job performance and specifically his alleged excessive tardiness, high incidence of reading errors and "dead air," and failure to adapt to the "middle of the road" format. The third step in this "indirect method" is for plaintiff to "prove by a preponderance of the evidence that the reasons offered by the employer were not its true reasons but were merely a pretext for discrimination." *Graefenhain*, at 18.

The ultimate burden of persuading the jury that it is more likely than not that plaintiff was fired because of his age remains with plaintiff. Plaintiff here presented sufficient evidence to enable a reasonable jury to conclude that WCLR's proffered justifications were a pretense for concealing its actual discriminatory designs. He showed that he had not received any complaints about tardiness since the reprimand in October 1977, nearly two and a half years before the firing. As for the claim of excessive reading errors, plaintiff denied that his mistakes were "excessive" and stated that he did not recall any WCLR manager ever discussing the subject with him. Plaintiff testified that the "dead air" occurred for only a few seconds each month, and was in part unavoidable (a fact

admitted by a witness for defendant) and in part not his fault but rather the chief engineer's fault. Plaintiff countered the proffered reason that he failed to adapt to the new format with the consultant's report prepared for WCLR that concluded that plaintiff "did a good job of representing the WCLR format." Finally, plaintiff presented substantial evidence that he performed his job well to counter WCLR's general claim that his job performance was unsatisfactory. See *supra* at p. 162. This evidence of good performance was "highly relevant" to prove that WCLR's specific justifications related to his allegedly inadequate job performance were a pretext for discrimination. *Graefenhain*, at 19.

In sum, plaintiff presented sufficient evidence showing that the proffered justifications were pretextual, and this created a jury question whether his firing was in fact on account of his age, in violation of the ADEA. The lack of any other legitimate proffered justifications for the discharge than those that the trier of fact may disbelieve invites the conclusion by the trier of fact that plaintiff was in fact fired for discriminatory reasons. See *Graefenhain*, at 18 and n. 7. The foregoing evidence was sufficient to provide a reasonable basis for the jury's verdict but there was even more. Plaintiff put forward evidence that his discharge resulted from a decision by WCLR's management that his age was incompatible with the "youthful image" they thought desirable for drawing a younger audience. See *supra* at p. 162. The evidence supporting a reasonable inference that WCLR systematically eliminated announcers in the protected age group so as to realign the age of its announcers with that of the newly chosen target audience was another line of proof that allowed the jury to conclude that plaintiff was not fired because of the proffered justifications but because of his age. See generally *Graefenhain*, at 19–20.[3] The totality of the evidence provided a reasonable basis for the jury verdict

---

**3.** The evidence of systematic discrimination was also relevant to the issue of willfulness, as discussed *infra*.

and defendant's JNOV motion was properly denied.

■ The only other issue that we need address in this appeal is WCLR's challenge to the jury's conclusion that its violation of the ADEA was willful. See 29 U.S.C. § 626(b). WCLR claims that the jury instruction incorrectly defined the term "willful," but plaintiff argues that defendant waived the right to challenge the instruction on willfulness. WCLR did not object at trial to the challenged portion of the instruction and in fact stated that it had "no problems" with the "knew or reasonably should have known" language. Plaintiff's App. 183. A conflict in the Circuits had existed prior to the trial on October 31, 1984, by virtue of the Second Circuit's decision in *Air Line Pilots Association v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir.1983), affirmed in part and reversed in part, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and certiorari had been granted in that case on April 2, 1984, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 179. However, *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 156 (7th Cir.1981), was the unquestioned law of this Circuit. In this case, defendant's failure to object waived its right to challenge the instruction as incorrect in view of other Circuits' decisions, but it did not act as a waiver to challenge the instruction on the basis of an intervening Supreme Court decision and consequent change in the law. *General Beverage Sales Co. v. East-Side Winery*, 568 F.2d 1147, 1152–1153 (7th Cir. 1978); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 286 n. 5 (5th Cir.1986). Given the unquestioned status of *Syvock* in this Circuit prior to *Trans World Airlines v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), the prior silence of the Supreme Court on this issue, and the increased frequency with which parties have been sanctioned for challenging legal standards that are well established in a Circuit, the defendant's failure to object in this case was not a waiver of its right to press its challenge based on *Thurston* and its progeny.

Defendant contends that the district court erred when it instructed the jury that plaintiff could prove willfulness by showing that "the defendant's actions were knowing and voluntary and that the defendant knew or reasonably should have known that its actions violated the [ADEA]." Defendant's App. 399. The instruction mirrored the standard adopted by this Circuit in *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d at 156. In the later case of *Trans World Airlines v. Thurston*, the Supreme Court stated that a definition of willfulness that required the plaintiff to show that defendant "knew or showed reckless disregard" for whether its actions violated the ADEA was "reasonable." 469 U.S. at 126, 105 S.Ct. at 624. However, the Court referred to this definition as just "an acceptable way to articulate a definition of 'willful,'" *id.* at 129, 105 S.Ct. at 626, and indicated that other definitions of "willful" that resemble common law negligence rather than recklessness were consistent with the willfulness requirement in the ADEA. The Court referred approvingly to definitions of "willful" as (1) " 'wholly disregards the law ... without making any reasonable effort to determine' " whether the actions violate the law (quoting *Nabob Oil Co. v. United States*, 190 F.2d 478, 479 (10th Cir.1951), certiorari denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659), (2) " 'careless disregard [for] whether or not one has the right so to act,' " (quoting *United States v. Murdock*, 290 U.S. 389, 395, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933)), and (3) "a disregard for the governing statute and an indifference to its requirements" (citing *United States v. Illinois Central R. Co.*, 303 U.S. 239, 242–243, 58 S.Ct. 533, 534–535, 82 L.Ed. 773 (1938)). *Thurston*, 469 U.S. at 126–127, 105 S.Ct. at 624–625. Given this seemingly deliberate decision not to adopt a monolithic formulation of the ADEA's willfulness requirement, it is not surprising that two of our recent cases have treated the *Syvock* formulation of "knew or reasonably should have known" as consistent with *Thurston*. See *Kossman v. Calumet County*, 800 F.2d 697, 701 (7th Cir.1986), certiorari denied, —— U.S. ——, 107 S.Ct.

1294, 94 L.Ed.2d 151; *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 117 (7th Cir.1986), certiorari denied, —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). But see *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285–288 (5th Cir.1986) (concluding that *Thurston* requires a "reckless disregard" formulation but failure to give it was harmless error under the facts of the case).

We finally resolved this question in *Graefenhain* where we held that the willfulness standard in *Syvock* is consistent with *Thurston* and is still the law of this Circuit. *Graefenhain*, at 23. In *Thurston*, the Supreme Court explicitly rejected a proposed definition of willful that allowed liability if the employer knew that the ADEA was "in the picture," because that standard would allow the recovery of liquidated damages even if the employer acted "reasonably and in complete 'good faith,'" a result the Court thought contrary to Congress' intent. 469 U.S. at 127–128 and n. 22, 105 S.Ct. at 624–625 and n. 22.[4] The *Syvock* definition comports with this concern because if an employer reasonably should have known that its actions were illegal, then the employer was not acting reasonably. Furthermore, this standard avoids rewarding employers who are unreasonably ignorant of the law. As we held in *Graefenhain*, the standard for awarding liquidated damages under the ADEA is whether the employer knew or reasonably should have known of the ADEA's requirements yet still fired the employee because of his or her age.

■ Viewing the evidence in the light most favorable to plaintiff, there was a reasonable basis in the record for the jury's verdict that WCLR's violation of the ADEA was willful. Plaintiff's evidence allowed an inference that WCLR was systematically discharging older announcers because of their age and by doing so was willfully violating the ADEA and not acting "reasonably and in complete 'good faith.'" *Thurston*, 469 U.S. at 128 n. 22, 105 S.Ct. at 625 n. 22. Of even greater import, WCLR itself introduced the testimony of its general manager that he knew a violation of the ADEA would subject the station to sanctions by the Federal Communications Commission and a possible loss of its license. Plaintiff's App. 146; see Trial Tr. 64–65 (Nov. 5, 1984). Given that WCLR is in a heavily regulated industry and is required to periodically renew its license, it is fully expectable that it would be familiar with legal requirements like those in the ADEA. WCLR's trial strategy apparently was to deny that any policy of firing older announcers existed and it introduced evidence of its management's familiarity with the ADEA and the regulatory repercussions from a violation of it in a failed attempt to convince the jury that it would not fire employees because of their age. The district judge stated in denying the JNOV motion that "[t]here is no question that WCLR management was well aware of the legal prohibition against age discrimination." Defendant's App. 24. The jury found by special interrogatory that plaintiff was fired in violation of the ADEA and this combined with defendant's touted familiarity with the Act and the repercussions from a violation, given its regulated status, provided a reasonable basis for the jury's verdict that the violation was willful.[5]

We affirm the jury's finding of liability and award of liquidated damages. The dis-

**4.** The Supreme Court also rejected a definition of willfulness which would require the plaintiff to prove that the employer "intended to violate the [ADEA]," and the Court indicated that an evil motive or bad purpose need not be shown to recover liquidated damages. *Thurston*, 469 U.S. at 126 n. 19, 105 S.Ct. at 624 n. 19.

**5.** Even if the *Syvock* formulation were to state the law incorrectly—as defendant argues and we reject-under the facts of this case the failure to use the reckless disregard instruction would

be harmless error not affecting the substantial rights of the parties. See *Alloy Int'l Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir.1980); 28 U.S.C. § 2111. WCLR admitted that it was familiar with the requirements of the ADEA. Given this concession, it is hard to imagine how WCLR could argue (let alone succeed in convincing a jury) that even if it fired plaintiff because of his age it was not done in "reckless disregard" of the ADEA.

trict court's opinions so correctly handle the other issues raised by the parties that to embroider upon them further would amount to supererogation. However, plaintiff's amended bill of costs for $2,175.74 was overlooked below and consequently he was awarded only $1,633.10 pursuant to his first bill of costs. The district court is directed to award him the difference. Affirmed in all other respects.[6]

---

6. Other contentions raised by the parties have been fully considered but do not merit discussion.