Vernon F. BURNS and Thelma M. Barker, Plaintiffs–Appellees,

v.

TEXAS CITY REFINING, INC., Defendant–Appellant.

No. 88–6178.

United States Court of Appeals, Fifth Circuit.

Rehearing and Rehearing En Banc Denied Feb. 5, 1990.

Douglas H. Chilton, Mabry, Herbeck & Chilton, Texas City, Tex., J. Bruce Bennett, Austin, Tex., for defendant-appellant.

Anthony P. Griffin, Yvonne M. Williams, Galveston, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, JOHNSON, and SMITH, Circuit Judges.

JOHNSON, Circuit Judge:

Texas City Refining appeals from the district court's award of damages to plaintiffs Vernon Burns and Thelma Barker following the jury's determination that Burns and Barker were improperly discharged on the basis of age. For the reasons set out below, we affirm in part, reverse in part, and remand to the district court with instructions to modify the judgment in a manner consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In May of 1960, Texas City Refining, Inc. (TCR) hired Vernon Burns as a janitor at TCR's oil refining plant in Texas City, Texas. In 1967, TCR obtained the services of six janitors to assist Burns in cleaning the plant. These janitorial services were obtained through a contract between TCR and Mainland Janitorial Service. In 1968, TCR placed Burns in the position of supervising janitor; Burns' primary responsibility was to supervise the activities of the contract janitors supplied by Mainland. In March of 1977, TCR hired Thelma Barker, previously a contract janitor, as an assistant supervisor to Burns. As supervisors, both Burns and Barker were considered part of TCR's management.

In 1978, Burns started a janitorial service known as Star Janitorial. Star, a competitor of Mainland, obtained contracts to clean various buildings in the Texas City area, including the Texas City National Bank Building (TCNB). The practice of employees operating an outside business was not against TCR's policy. In fact, Star, through Burns, would rent equipment to TCR. Burns hired Doris Turner to oversee Star's day-to-day operations. Turner testified that she would often come to TCR at night, pick up a Star Janitorial van, drive to TCNB, and return the van after she finished cleaning the bank.

H.M. Nipp, TCR's Manager of Purchasing, was responsible for arranging janitorial services. In January of 1985, when Burns was sixty-three years old and Barker was fifty-one years old, Nipp approached Burns about getting a bid from Star Janitorial for the entire scope of janitorial work at TCR. Nipp's idea was that Burns and Barker would leave TCR's employ but continue to perform janitorial services at TCR as contractors with Star. Nipp made no guarantee that TCR would award the contract to Star rather than Mainland, or that the contract, worth $175,000 per year, would be renewed annually. Though Nipp testified that he knew Burns' retirement benefits had vested, both Nipp and Burns testified that Nipp never mentioned retirement in connection with his proposal. Furthermore, Burns testified that he asked Nipp about Barker's pension, and was told that he (Burns) could take care of Barker's pension himself. Burns refused the offer; one reason for the refusal was that Barker's pension had not yet vested.

Burns testified that, after he refused Nipp's offer to either retire or quit and take Barker with him to Star Janitorial, the scrutiny of his work and crew intensified. Burns claims that he was watched constantly by the guards. Burns also testified that he and his crew were given lie detector tests in connection with a theft of funds which Burns claimed took place nearly two hours before his crew came on duty. TCR rebutted with testimony that the theft took place between 5 p.m. and 7 a.m. when Burns and crew were on duty.

Nipp testified that the discharge of Burns and Barker stemmed from TCR's discovery of their alleged moonlighting. Specifically, he stated that on July 24, 1985, he received a telephone call from Carol Cline, TCR's Manager of Office Services and Burns' and Barker's immediate supervisor. Nipp testified that Cline informed him that she had been told by one of Mainland's contract janitors, Olga Alvarado, that either Burns or Barker was leaving TCR in the evenings and working at TCNB at the time they were supposed to be supervising the Mainland crew. Neither Alvarado nor Cline testified at trial. Both Burns and Barker were supposed to remain at

TCR between the hours of 5:00 p.m. and 1:00 a.m., although Burns was allowed to leave to run any necessary errands.

Nipp testified that he decided to verify the accusations himself. Consequently, that evening he drove to TCR's refinery where he observed a Star Janitorial van leave. Nipp followed the van to TCNB. Nipp stated that, through the windows at the bank, he saw Barker performing janitorial work. The next morning, Nipp reported his observations to TCR's Vice President of Administrative Services, Rich Sherman. Sherman informed George Raven, TCR's Manager of Employee Relations. Raven testified that Carol Cline had also discussed the TCNB incident with him.

That evening, Nipp and Raven, in separate cars, performed the same stake-out at TCNB. Both testified that they observed Barker performing janitorial services in the bank and that they were close enough to make a positive identification. They reported to Sherman, who directed them to investigate further. On July 29, Raven again performed a stake-out, and testified that the same routine occurred.

Neither Raven nor Nipp discussed the alleged moonlighting with Burns or Barker until the company decided to conduct termination interviews. At the interview, which occurred on August 2, 1985, both Burns and Barker denied that they had been moonlighting for Star Janitorial. Nevertheless, both were presented with the option of resigning or being fired. Both chose to resign, and utilized the resignations which TCR had prepared before the interview. At the time of the discharge, Burns' pension benefits had vested; Barker's had not. A five year TCR employee named Bryl Mahoney, age thirty-six, was promoted from the mail department to fill Burns' position as supervising janitor.

On September 26, 1986, Burns and Barker filed a complaint alleging that their discharge was the result of racial and age discrimination in violation of 42 U.S.C. § 1981 and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et*

*seq.* TCR denied the violations, and alleged that the discharges were for good cause. The case proceeded to a jury trial on the age discrimination claim only. TCR moved for a directed verdict following presentation of Burns' and Barker's case-in-chief. The district court denied the motion. TCR renewed the motion at the close of the evidence.[1] The motion was again denied.

In answering the special interrogatories, the jury found that TCR had willfully discriminated against both Burns and Barker on the basis of age. Final judgment was entered, awarding $189,335.42 in back pay and liquidated damages to Burns, and $294,055.08 in front pay, back pay, and liquidated damages to Barker. Pre- and post-judgment interest was included in the computation of both awards.

TCR filed a timely notice of appeal to this Court attacking the sufficiency of the evidence to support the jury verdict. In addition, TCR argues that the district court erred in awarding liquidated damages and prejudgment interest, and in awarding front pay to Barker. After reviewing the record, we conclude that while there is sufficient evidence to support the jury's conclusion that the discharge was willful and discriminatorily motivated, there is insufficient evidence to support the front pay award. Additionally, we conclude that prejudgment interest is proper only on the back pay owing from August 2, 1985, to the date of judgment. Prejudgment interest should not have been awarded on the liquidated damage portion of the award. Consequently, we affirm in part and reverse in part.

## II.  DISCUSSION

### A.  *Discriminatory Motive*

■ In determining whether there is sufficient evidence to submit a case to a jury in an age discrimination case,

the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences

---

**1.** A motion construable as a directed verdict at the close of the evidence by the party seeking  review is a prerequisite to presenting a claim of insufficient evidence to the appellate courts.

most favorable to the party opposed to the motion [for directed verdict].

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969). Similarly, a jury verdict will not be overturned unless it is not supported by substantial evidence. *Guthrie v. J.C. Penney Co., Inc.,* 803 F.2d 202, 207 (5th Cir.1986) (factual findings in age discrimination cases are reviewed on the same standard as in other cases). This is because the role of an appellate court reviewing a claim of insufficient evidence in an age discrimination case remains the same as that in any other case: to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have found as the jury did. In the instant case, TCR argues that this standard has not been met. Throughout the process of review, the realization that it is the province of the jury rather than the court, to review and weigh evidence must be kept firmly in mind.

In ADEA cases in which there is no direct evidence of age discrimination, the same evidentiary procedure formulated for Title VII cases applies. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, an employee must make a prima facie case by demonstrating that (1) he was discharged; (2) he was qualified for his position; (3) he was a member of the protected class at the time of discharge; and (4) he was replaced by someone outside the protected class. *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504–05 (5th Cir.1988). TCR does not dispute that Burns and Barker established a prima facie case.

Once the prima facie case is demonstrated, the burden of production shifts to the employer to articulate a legitimate business reason for the employee's termination. Once a legitimate reason for termination is articulated, it is incumbent upon the plaintiff to demonstrate that the defendant's articulated reason is merely a pretext for an unlawful discrimination. *See, e.g., Smith v. Farah Mfg. Co., Inc.,* 650 F.2d 64 (5th Cir.1981). This may be accomplished either by showing that a discriminatory reason motivated the decision in whole or in part, or by showing that the defendant's proffered reasons are unworthy of credence. *Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95. The plaintiff retains the burden of persuading the factfinder that impermissible discrimination motivated the termination. The evidence of pretext must demonstrate that age was a determinative factor in the sense that the employee would not have been discharged but for the employer's motive to discriminate because of age. "[O]therwise, the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for 'just cause' to all people over 40." *Bienkowski,* 851 F.2d at 1508 n. 6.

TCR essentially argues that Burns and Barker have failed to rebut the articulated justification for their termination—specifically, that they were caught in the act of moonlighting for Star Janitorial. Absent some additional evidence of discriminatory animus, TCR argues, Burns and Barker have failed to present evidence sufficient to prove that, but for their age, they would not have been discharged.[2]

At trial, there was a substantial amount of evidence proffered concerning the alleged moonlighting activities of Burns and Barker. Burns and Barker, however, presented significant evidence to the jury countering the accusation of outside employment during working hours. Specifically, Doris Turner testified that it was she who cleaned the bank each night and that Barker had never worked there. Her testi-

---

**2.** It should be noted on appeal that TCR seems to be couching its argument in terms of a "good faith, but mistaken belief" concerning the moonlighting activities of Burns and Barker. This is contrary to the theme presented at trial where TCR followed an "either they're lying or we are" approach. It is axiomatic that such a mistaken belief would constitute a legitimate ground for dismissal. The ADEA specifically provides that discharge of protected individuals for good cause shall not be unlawful. 29 U.S.C. § 623(f)(3) (1976). In the instant case, the jury had more to base its decision on than a liar's contest on the question of moonlighting. Other evidence existed to establish a discriminatory animus and to support the jury's finding in that regard.

mony is supported by Star Janitorial's records which do not reflect any such activity by Barker. Turner also testified that it was she who borrowed the Star Janitorial van and took it to the bank.

It is certainly not necessary, and indeed is often impossible, for the plaintiff in a discrimination case to prove the defendant's state of mind by direct evidence. Defendants are rarely courteous enough to admit in some documented form that an asserted rationale behind a discharge is really a pretext for an illicit motive. Here, the record reflects some basis upon which a jury could conclude that the employer's justification lacked veracity. *Bienkowski*, 851 F.2d at 1508. In addition, other evidence that the discharge was based on age was introduced. For example, evidence indicating that Bob Mahoney, TCR's manager of industrial relations, had inquired as to Burns' pension and early retirement status in March of 1982 absent any inquiry from Burns himself. On cross-examination, Mahoney agreed that with the removal of older workers, the payroll was reduced as well as the amount of pension paid. Following Mahoney's inquiry into Burns' retirement status, Burns was approached with the offer of a potential contract to Star Janitorial and the requirement that Barker leave TCR as well. Additionally, Burns and Barker were replaced with a younger employee with no janitorial experience at a salary $49.00 more than that paid to Barker.[3]

In reviewing the evidence under the *Boeing* standard to determine whether the evidence supports the jury verdict, this Court need not examine the evidence put on to support the *Burdine* stages; rather, we look to the record as a whole. After this examination, we cannot conclude that there was insufficient evidence for a jury to conclude that the discharge of Burns and Barker was based on discriminatory factors.

### B. *Willfulness*

◼ TCR also challenges the jury's finding that the company willfully violated the ADEA. According to *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), a violation of the ADEA is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *See also, Uffelman v. Lone Star Steel*, 863 F.2d 404 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989). Negligent violations are not willful violations for purposes of determining whether the employer's act was willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

◼ TCR contends that the decision to terminate Burns and Barker was negligent at most. However, under the standard articulated in *Boeing*, this Court must make all reasonable inferences from the evidence in favor of Burns and Barker. The evidence challenging the veracity of TCR's moonlighting claim creates the reasonable inference that such claim was in fact contrived. On the basis of that inference, and other evidence which Burns and Barker

---

3. The evidence before the jury included evidence presented in the plaintiffs' prima facie case, which the *Burdine* Court explained can also be used to show pretext and illicit motive, and the plaintiffs' claims, buttressed by Turner's testimony, that neither Barker nor Burns engaged in illicit work at TCNB. Additionally, plaintiffs presented evidence indicating TCR's inquiries into Burns' retirement status.

In considering this evidence, the jury may also consider the initial inference of discrimination raised by the establishment of a prima facie case. The Supreme Court, in *Burdine*, noted that although the presumption of discrimination (shifting the burden of production) drops from the case once the employer has articulated a legitimate reason for its action, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
450 U.S. at 257 n. 10, 101 S.Ct. at 1095 n. 10.

presented, a reasonable jury could conclude that TCR's story about moonlighting was fabricated in order to legitimize a decision to replace Burns and Barker because of their age and to do so before Barker's pension benefits vested. *See Uffelman*, 863 F.2d at 409 (when presented with conflicting evidence and inferences, the court's task is to determine whether the record contains evidence upon which a reasonable trier of fact could conclude as the jury did). Consequently, the finding of willfulness is supported.

Pursuant to 29 U.S.C. § 626(b), a finding of willfulness entitles the plaintiff to a doubling of any back pay award. Hence, the plaintiff receives the amount of back pay as compensatory damages, and that same amount as liquidated damages. Because we conclude that the jury's finding of willfulness is supported by the record, we also conclude that the award of liquidated damages in the amount of the back pay awarded is proper.

The parties are in agreement that a typographical error in the final judgment awarded Burns an excess of $500.50. The judgment, which stated "Vernon Burns shall recover as back wages and employee benefits the amount of $94,417.46, together with liquidated damages in the amount equal to $94,917.96," must therefore be modified.

## C. *Pre–Judgment Interest*

■ The circuit courts are split as to whether an award of prejudgment interest is proper when a court awards liquidated damages to plaintiffs in ADEA suits. The majority view holds that such interest is not available on the ground that, since the purpose of liquidated damages is "to provide for otherwise difficult to calculate costs such as the loss of the use of unpaid wages," prejudgment interest would be duplicative. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1336 (7th Cir.1987), *vacated on other grounds,* — U.S. —, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), *on remand,* 860 F.2d 834 (7th Cir.1988). In addition, the court in *Coston* relied on the damages provisions of the Fair Labor Standards Act which are incorporated into the ADEA. It is well-settled that prejudgment interest is not permitted where the employee has been awarded liquidated damages or where such damages, though available, have been denied. *See, e.g., Reeves v. International Tel. & Tel. Corp.*, 705 F.2d 750 (5th Cir. 1983).

Basing its analysis on this well-settled rule, the Seventh Circuit denied prejudgment interest in cases such as that before us today.

The courts determining damages in ADEA cases should not whittle into the damages analysis required by the FLSA simply because the result might be different if one looked at the ADEA as a separate animal from the FLSA and ignored the congressional command to look to the FLSA for damages. The decision to provide damages to ADEA plaintiffs as if they were FLSA damages is a decision made by Congress that precludes the courts from "legislating" their own favored remedies.

*Coston*, 831 F.2d at 1336.

In reaching this decision, the Seventh Circuit refused to follow the analysis applied by the Eleventh Circuit. Relying on the Supreme Court's statement in *Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523, that liquidated damages are punitive in nature, that court concluded that the double recovery rationale was inappropriate. The court concluded that prejudgment interest was available to ADEA plaintiffs as compensatory damages. *See, Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094 (11th Cir.1987). The *Lindsey* court refused to follow the rationale applied in *Coston* which concluded that because ADEA damages are to be calculated as FLSA damages, prejudgment interest is inappropriate.

It would be a difficult task to improve on the reasoning set forth in *Coston*. As this Court noted in *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470–

71 n. 4 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989), the Tenth, Sixth, Eighth, First, and Fourth Circuits have agreed with the Seventh Circuit that Congress did not intend that an ADEA plaintiff be entitled to both prejudgment interest and liquidated damages. *See id.* By holding, as we do in the instant case, that prejudgment interest was improperly awarded, we align this Court with the aforementioned circuits.

### D. *The Front Pay Award*

■ Under the ADEA, a district court has discretion to award a wrongfully discharged employee front pay. Front pay is sometimes awarded in lieu of reinstatement. Its purpose is to compensate the plaintiff for lost future wages and benefits.

The jury found that $180,000 would compensate Barker for the wages and employee benefits she would have received following the date of trial had she remained at TCR until her projected retirement in 2003. The district court discounted the award to present value and rendered judgment awarding Barker $151,718.40.

TCR argues that there was insufficient evidence to support the award of front pay in the instant case. We agree with TCR's contention that the award was purely speculative,[4] particularly in light of the June 30, 1988, sale of TCR's assets to Hill Petroleum. At the time of this sale, all employees except a small transition team were terminated. TCR correctly points out that the record is devoid of any indication that Hill would have rehired Barker.

This Court reviews an award of front pay for an abuse of discretion. In the instant case, such abuse has been shown. The jury's conclusion that Barker would have received $180,000 from the time of trial had she remained with TCR is unsupported by substantial evidence.

### III. CONCLUSION

After reviewing the record, we cannot say that the district court erred by rendering judgment on the jury's findings that

TCR discharged plaintiffs Barker and Burns on the basis of age in willful violation of the ADEA. The award of liquidated damages in the amount of the back pay award is proper based on the finding of willfulness; however, the district court's award must be modified to eliminate the extra $500.50 calculated into Barker's award. Furthermore, while an award of prejudgment interest is proper in ADEA cases, the interest should have been calculated on the back pay award only; calculating the interest based on the back pay award and the liquidated damage award was error. Finally, there is insufficient evidence to support an award of front pay. This award is reversed.

Based on the foregoing, we affirm in part, reverse in part, and remand to the district court for the appropriate modifications.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

that time. The longer the front pay period, the more speculative the front pay award.

*Rengers v. WCLR Radio Station,* 661 F.Supp. 649, 651 (N.D.Ill.1986), *aff'd,* 825 F.2d 160 (7th

Cir.1987), *vacated on other grounds,* —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988).