**George LYNCH, Plaintiff–Appellant,**

v.

**BELDEN AND COMPANY, INC., Defendant–Appellee.**

No. 88–2171.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1989.

Decided Aug. 16, 1989.

John O. Moss, Moss & Walton, Indianapolis, Ind., for George Lynch.

Jay R. Larkin, Douglas J. Heckler, William E. Roberts, Barnes & Thornburg, Indianapolis, Ind., for Belden and Co., Inc.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

George Lynch brought this action against his employer, Belden and Company (Belden), under 42 U.S.C. § 1981 [1] alleging that Belden had discriminated against him because of his race by denying him promotions and transfers and by subjecting him to racial harassment. The case was tried before a jury, and, on May 16, 1988, the jury returned a verdict in favor of Belden. Mr. Lynch appeals, contending that the district court improperly instructed the jury. We now affirm.

1. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C. § 1981.

## I.

### Background

#### A. *Facts*

Mr. Lynch, who is black, has been employed by Belden at its Richmond, Indiana plant since 1968.[2] Since 1976, Mr. Lynch has held the position of Electrician in Belden's machine shop. The job classification of Electrician is one of several "skilled trades" positions in the machine shop at Belden's plant. Other skilled trades positions include Electronic Technician, Millwright, Pipefitter, Lathe Operator, Machinist, and Tool and Die Maker.

Mr. Lynch contends that Belden discriminated against him in a number of ways. On December 7, 1981, Mr. Lynch applied for the position of Boiler Room Operator. He maintains that Belden refused to promote him to this position solely because of his race. Similarly, on several occasions between 1973 and 1986, Mr. Lynch sought promotion to the position of Electronic Technician. He maintains that white employees with less experience than he has were placed in the positions for which he applied. Mr. Lynch also alleges that, in 1982 and 1983, he requested transfers from one position with Belden to another. He maintains that, although he was qualified for each of the positions that he sought, his transfer requests were denied solely because of his race. *See* R.8 at 2 (Plaintiff's Statement of Contentions). Finally, Mr. Lynch contends that he was subjected to racial harassment. He presented testimony that he was given heavy work assignments in hot and dirty worksites more frequently than were white employees, that Evelyn Sellers, a black Electronic Technician apprentice, was instructed not to ask him for assistance when similar instructions were not given to white employees, and that his supervisor followed him closely around the plant. Mr. Lynch maintains that white employees were not treated in a similar fashion.

Belden introduced evidence to rebut each of Mr. Lynch's claims. James Bright, Belden's machine shop and maintenance manager, testified that the Boiler Room Operator position was first offered to a black employee, who declined the job because he had decided that it would interfere with his weekend recreational activities. The job was next offered to, and accepted by, a white employee. Mr. Lynch was ranked second from last on a list of applicants for the job prepared by Belden management. The list rankings were based on the applicants' mechanical or pipefitter knowledge and their absenteeism and tardiness records.

Mr. Bright also testified that Mr. Lynch was unqualified for the position of Electronic Technician. In order to qualify for the position, an applicant was required to have had, among other things, two years' experience as an electronic technician. Mr. Lynch claimed that he had satisfied this requirement since he had repaired radios and televisions in his basement. However, he did not have a license to operate a TV repair business, as required by state law, and he was unable to produce tax records indicating that he had derived any income from operating a repair business in his home. The company also presented testimony that, each time Mr. Lynch applied for an Electronic Technician position, white employees were also rejected as nonqualified and that the applicant selected in each instance met the qualifications listed in the position's job description.

With regard to Mr. Lynch's allegation of racial harassment, Belden presented testimony that every other electrician in Mr. Lynch's department had been assigned to the undesirable jobs complained of by Mr. Lynch. In addition, Mr. Lynch's supervisor denied that he had ever "followed" Mr. Lynch around the plant. Rather, supervisors routinely circulate in the plant and take appropriate disciplinary action when necessary. Finally, Mr. Lynch's supervisor testified that Evelyn Sellers was instructed not to ask Mr. Lynch for assistance be-

---

**2.** Belden is primarily engaged in the manufacture and sale of electronic wire and cable products.

cause she was being "pushed out of the nest" as part of her apprenticeship program. *See* Tr. (Defendant's Case–In–Chief) at 155.

## B. *Issues on Appeal*

Mr. Lynch contends that the district court erred in instructing the jury in this case. His arguments are based on two instructions, Instructions No. 11 and No. 12. Instruction No. 11 reads as follows:

For the purposes of this case, 42 U.S.C., Section 1981 entitles a black person to equal opportunity and treatment in employment. Thus, when an employer fails to promote a black person because of that person's race, the law has been violated and the black person may file suit and recover damages.

In order for a plaintiff to establish his claim, plaintiff has the burden of proving by a preponderance of the evidence that defendant had a racially discriminatory purpose or motive in employment decisions with regard to the plaintiff.

The mere fact that the plaintiff is black and was also not promoted in his employment is not sufficient in and of itself to establish plaintiff's claim. To prove that defendant acted unlawfully, plaintiff must prove that it is more likely than not that his race was a reason the defendant failed to promote him. It need not have been the only reason.

In order for the plaintiff to recover on his claim against the defendant, the plaintiff must prove the following essential elements by a preponderance of the evidence:

First: that defendant intentionally discriminated against plaintiff; that is, plaintiff's race was a motivating factor in defendant's decision not to promote the plaintiff; and

Second: as a direct result of such discrimination, plaintiff sustained damages.

Tr. (Court's Instructions and Objections Thereto) at 10–11. Mr. Lynch objected to this instruction on the ground that it did not refer to his transfer claim or his harassment claim and thus left the impression that Mr. Lynch could *only* recover if he proved that he was not *promoted* as a result of discrimination. *See id.* at 28–29.

Instruction No. 12 reads as follows:

To prove intentional discrimination, plaintiff need not prove that his race was the sole motivation or the primary motivation for defendant's employment decision. Also, plaintiff is not required to produce direct evidence of unlawful intent. It is not easy to prove motive directly because there sometimes is no way to fathom or scrutinize the operations of the human mind. Intentional discrimination, however, if it exists, is a fact which you may infer from the existence of other facts.

With respect to each of plaintiff's claims, in deciding whether the defendant intentionally discriminated against the plaintiff because of his race, you should first consider whether plaintiff has established the following elements:

First that George Lynch is black;

Second, that George Lynch was satisfactorily performing his job;

Third, that he was denied certain job assignments and promotional opportunities;

Fourth, the employer, Belden, chose white persons with similar qualifications or qualifications not equal to plaintiff's to perform the jobs; and

Fifth, that George Lynch was damaged as alleged in his complaint.

If you find that plaintiff has proved each of these elements, then plaintiff has proved a prima facie case. A prima facie case means that the plaintiff has sufficiently established his cause of action by a preponderance of the evidence and is entitled to a verdict in his favor unless defendant rebuts such evidence.

Thus, it then becomes your duty to determine the second issue, namely, did the defendant introduce evidence showing that there was a legitimate nondiscriminatory reason why it did not promote or transfer plaintiff. If your answer on this second issue is yes, that defendant has articulated or stated his legitimate nondiscriminatory reason for its failure to promote or transfer the

plaintiff, then you should decide in favor of the defendant, unless the plaintiff has also proved by a preponderance of the evidence that the defendant's articulated legitimate nondiscriminatory reason is a pretext, disguising an underlying intent to discriminate on the basis of race.

*Id.* at 11–13. Mr. Lynch objected to this instruction on the ground that it erroneously instructed the jury that Belden could overcome Mr. Lynch's prima facie case, which he argues was established by direct evidence of discriminatory disparate treatment, merely by articulating a legitimate nondiscriminatory reason for its actions. *Id.* at 26.

Both Instruction No. 11 and Instruction No. 12 are based on instructions tendered by Mr. Lynch himself. *See* R.43 (Plaintiff's Jury Instructions No. 1 & No. 3). In addition, Mr. Lynch tendered, and then withdrew, two instructions informing the jury that it could conclude that Belden discriminated against him if it found that Belden failed to promote or transfer him because of his race or subjected him to racial harassment. *See* R.50 (Plaintiff's Supplemental Jury Instructions No. 14 & No. 17). At oral argument, Mr. Lynch's counsel informed us that these instructions were withdrawn because he had reached an "understanding" with the district judge that each of the claims (promotion, transfer, and harassment) mentioned in the tendered instructions would be incorporated into the instructions that the court intended to give to the jury.[3] This understanding was reached at a Friday evening instructions conference in the judge's chambers that was not transcribed for the record. Mr. Lynch's counsel maintains that, when the parties returned to court on Monday and were given copies of the instructions that the judge intended to read to the jury, he informed the court that the instructions were still unsatisfactory. The parties, however, were not given a chance to object

on the record to the instructions until after they had been read to the jury. After the instructions had been read and the jury was excused, both parties made objections on the record. The court, however, decided not to make any changes in the instructions as read based on the objections that were asserted.

## II.

## Analysis

### A. *Instruction No. 11*

■ As noted above, Mr. Lynch maintains that Instruction No. 11 improperly prevented the jury from considering his harassment and transfer claims and left the erroneous impression that he could recover *only* if he proved that he was *not promoted* because of his race. To the extent that this argument is based on Mr. Lynch's claim that he was subjected to racial harassment, it must be rejected in light of the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson,* the Court held that section 1981 only proscribes discriminatory conduct at the time of the initial formation of a contract and conduct that impairs the right to enforce contract obligations through legal process. *See* 109 S.Ct. at 2374. Postformation conduct by an employer relating to the terms and conditions of continuing employment, however, is not actionable under section 1981. *Id.* Because discriminatory postformation conduct, "including breach of the terms of the contract or imposition of discriminatory working conditions," *id.* at 2373, concerns the performance of existing contractual obligations and the conditions of continuing employment, it is, held the Supreme Court, more appropriately gov-

---

3. *See also* Tr. (Court's Instructions and Objections Thereto) at 29–30. When objecting to Instruction No. 11 after the instructions had been read to the jury, Mr. Lynch's counsel tried to remind the district judge about the prior conversation in which they had "discussed the need to include, at least from plaintiff's perspective, all of the plaintiff's claims within the instruction." *Id.* at 29. The judge apparently did not remember that this point had been raised during the conversation in chambers, *id.,* and told Mr. Lynch's counsel that he had "followed [his] tendered instruction." *Id.* at 30.

erned by state contract law and Title VII. *Id.*

Mr. Lynch's racial harassment claim is based on allegations that he received discriminatory job assignments and was singled out, because of his race, for special treatment by his supervisor. As in *Patterson*, none of the conduct that Mr. Lynch characterizes as racial harassment involves a refusal by Belden to make a contract with him or the impairment of his ability to enforce his established contract rights. *See id.* at 2374. Rather, Mr. Lynch's racial harassment claim attacks the conditions of his employment. Thus, his claim is not actionable under section 1981, and the district court's failure to include a reference to Mr. Lynch's racial harassment claim in Instruction No. 11 was not erroneous.

Mr. Lynch also contends that Instruction No. 11 is erroneous because it precluded the jury from considering his transfer claim. As a threshold matter, we note that, in the wake of *Patterson*, Mr. Lynch's transfer and promotion claims also may not be actionable under section 1981:

> [T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Id.* at 2377. Because this case was tried long before the Supreme Court's decision in *Patterson*, the record is not developed adequately in this regard. Therefore, we shall not rest our decision on this ground and shall address squarely Mr. Lynch's submission that the instructions were erroneous.

■ When reviewing a challenge to a jury instruction, we must view the instructions as a whole, and consider the challenged instruction "both in the context of the other instructions given and in light of the allegations of the complaint, opening and closing arguments and the evidence of record." *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 830 F.2d 716, 725 (7th Cir.1987); *see also Fisher v. Krajewski*, 873 F.2d 1057, 1064 (7th Cir.1989); *Vaughn v. Willis*, 853 F.2d 1372, 1376 (7th Cir.1988). The instructions must be construed in a " 'common sense manner, avoiding fastidiousness, inquiring whether the correct message was conveyed to the jury reasonably well.' " *General Leaseways*, 830 F.2d at 725 (quoting *Wilk v. American Medical Ass'n*, 719 F.2d 207, 218 (7th Cir. 1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984)). Moreover, when considering Mr. Lynch's challenge to Instruction No. 11, we must keep in mind " 'the artificiality of assuming that isolated passages in a lengthy set of instructions are apt to spell the difference between victory and defeat.' " *Id.* (quoting *W.T. Rogers Co. v. Keene*, 778 F.2d 334, 342 (7th Cir.1985)); *see also id.* ("Just as an allegedly erroneous instruction must be viewed in the context of the full charge and other surrounding circumstances, an allegedly erroneous omission of a sentence must also be viewed in context.").

We do not believe that the failure to include a reference to Mr. Lynch's transfer claim in Instruction No. 11, when read in the context of the entire trial, constituted error. The instructions, when read as a whole, reasonably informed the jury of Mr. Lynch's transfer claim. For example, at the beginning of its charge to the jury, the district court summarized Mr. Lynch's complaint. The court noted that "the complaint states that in 1982 and 1983, defendant failed and/or refused to transfer and/or promote plaintiff under the same terms and conditions as were afforded Caucasian employees, because of plaintiff's race." Tr. (Court's Instructions and Objections Thereto) at 7. In addition, Instruction No. 12 informed the jury that Mr. Lynch had a transfer claim as well as a promotion claim. In discussing the elements of the plaintiff's prima facie case, the court instructed the jury to consider whether Mr. Lynch had established that "he was *denied certain job assignments and promotional opportunities.*" *Id.* at 12

(emphasis supplied). The jury was also instructed that, if it determined that Mr. Lynch had established a prima facie case of discrimination, it then had to decide whether the defendant had introduced "evidence showing that there was a legitimate nondiscriminatory reason why it did not promote *or transfer* plaintiff." *Id.* at 13 (emphasis supplied).

The evidence presented by Mr. Lynch at trial also supports our conclusion that the failure to mention explicitly his transfer claim in Instruction No. 11 was not erroneous. Mr. Lynch presented evidence concerning his failure to receive the position of Boiler Room Operator in December 1981 and his failure to be promoted from Electrician to Electronic Technician on several different occasions. He did not, however, present any evidence identifying any additional "transfers" that he failed to receive. This is not surprising, since Mr. Lynch's "transfer" and "promotion" claims *both* refer to his failure to receive the Boiler Room Operator and Electronic Technician positions. *See, e.g.,* R.10 at 2; R.10, Lynch Deposition at 95–97 (claims based on refusal to transfer and failure to promote refer to failure to receive Electronic Technician position); R.13, Ex. E (Plaintiff's Affidavit in support of Plaintiff's Responsive Brief in Opposition to Defendant's Motion for Summary Judgment) (plaintiff "was not selected, promoted, nor transferred to the position of power plant operator") ("defendant refused to select, hire, promote and or transfer the plaintiff to the position of Electronic Technician"). The evidence presented by Mr. Lynch clearly informed the jury that his discrimination claims (whether characterized as refusal to transfer or as failure to promote) were based on his failure to receive these two positions. In light of the instructions as a whole, the evidence presented at trial, and Mr. Lynch's characterization of his own claims, we are satisfied that Instruction No. 11 did not misinform the jury despite the absence of any specific reference to Mr. Lynch's

transfer claim in that particular instruction.[4]

## B. *Instruction No. 12*

■ Mr. Lynch challenges Instruction No. 12 on the ground that it erroneously informed the jury that a defendant can overcome a prima facie case established by direct evidence of discrimination merely by articulating a legitimate nondiscriminatory reason for its actions. *See* Appellant's Br. at 8–11 (citing *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1539 (11th Cir.1988); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir.1982) ("[W]here a case for discrimination is proved by direct evidence it is incorrect to rely on a *McDonnell Douglas* form of rebuttal.... Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons."); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (the *McDonell Douglas* burden-shifting framework "is inapplicable where the plaintiff presents direct evidence of discrimination"). This objection, however, is meritless in this case, because Mr. Lynch failed to present any direct evidence of discrimination supporting his claim that he was not promoted or transferred because of his race.

■ In order to prevail, a section 1981 plaintiff must prove that he has been the victim of intentional discrimination. This showing can be made either by direct proof of discriminatory intent or by the method of indirect proof described in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Friedel v. City of Madison,* 832 F.2d 965, 972 (7th Cir.1987); *see also Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 568 (7th Cir. 1989) ("[T]he methods and order of proof applicable to a claim of disparate treatment under Title VII are equally availing under

---

**4.** Because we determine that the instructions that were given were adequate, we need not address whether the district court should have

given the instructions that Mr. Lynch's counsel tendered and withdrew.

§ 1981.") (footnote omitted). Direct evidence of discriminatory intent consists of actions or remarks by the defendant that reflect a discriminatory attitude. *See Hill,* 841 F.2d at 1539; *see also Thurston,* 469 U.S. at 121, 105 S.Ct. at 621 (direct evidence of discrimination available where the defendant's challenged action "is discriminatory on its face"); *Randle, supra,* at 569 ("by definition, direct evidence, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption"); B. Schlei & P. Grossman, Employment Discrimination Law 15 & n. 8 (2d ed. 1983) (noting that direct evidence of discriminatory motivation, which "is now relatively unusual," can consist of "evidence of bigoted or otherwise discriminatory statements made by the defendant's representatives"). The indirect method of proof outlined in *Burdine* and *McDonnell Douglas,* by contrast, allows a plaintiff to raise an inference of discriminatory intent even when no direct evidence is available. In order to establish a prima facie case of discrimination by the indirect method, a plaintiff need only show, by a preponderance of the evidence, that he applied for an available position for which he was qualified, but failed to receive the position under circumstances that "give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.[5] This presumption of discrimination can be rebutted if the defendant can produce evidence showing that "the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 254, 101 S.Ct. at 1094; *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the defendant has met its burden of articulating a legitimate, nondiscriminatory reason for its action, the plaintiff using the indirect method of proof can only prevail by showing that the defendant's "proffered and adequately supported nondiscriminatory rationales" are

mere pretexts for discrimination. *Friedel,* 832 F.2d at 973.

Our review of the record in this case reveals that Mr. Lynch presented no direct evidence that Belden's actions were the result of discriminatory intent. Rather, Mr. Lynch presented evidence showing that he was treated differently than were white employees who applied for the Boiler Room Operator and Electronic Technician positions. *See, e.g.,* Tr. II at 70–76. Such evidence gives rise to an inference of discriminatory intent pursuant to the indirect method of proof, but does not constitute direct evidence of discriminatory motivation on the part of Belden. Because Mr. Lynch presented only indirect evidence, it was proper for the district court to instruct the jury as to the *McDonnell Douglas/Burdine* formula for evaluating indirect evidence.[6] Instruction No. 12 accurately informed the jury of the parties' burdens under the indirect method of proving discrimination; thus, the court did not err in giving that instruction to the jury.

## Conclusion

The judgment of the district court is affirmed. Mr. Lynch's challenge to Instruction No. 11 must be rejected because his racial harassment claim is not actionable under section 1981 and because the instructions as a whole, in the context of this trial, accurately informed the jury of Mr. Lynch's promotion *and* transfer claims. In addition, Instruction No. 12 was appropriate in this case because Mr. Lynch offered only indirect evidence in support of his claim that he was not promoted or transferred because of his race.

AFFIRMED.

---

**5.** *See also* B. Schlei & P. Grossman, *supra,* at 1291 ("Proof in the individual disparate treatment case ... generally require[s] indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded to otherwise 'similarly situated' individuals who are not

within the plaintiff's protected group.") (footnote omitted).

**6.** The absence of direct evidence also makes inapplicable the Supreme Court's recent holding in *Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).