**Kenneth D. JACKSON, Stella Jo Soderblom, and Lannie D. Moore, Plaintiffs,**

v.

**GTE DIRECTORIES SERVICE CORPORATION, Defendant.**

**Civ. A. No. CA3–87–2705–D.**

United States District Court,
N.D. Texas.
Dallas Division.

April 2, 1990.

William C. Isbell of Wilson, Williams & Molberg, Dallas, Tex., for plaintiffs.

Richard M. Kobdish and Allan G. King of Johnson & Gibbs, Dallas, Tex., for defendant.

FITZWATER, District Judge:

The instant motion for partial summary judgment presents questions that pertain to the law of employment discrimination, including whether retaliatory discharge and discriminatory demotion claims are actionable under the Supreme Court's interpretation of 42 U.S.C. § 1981 in *Patterson v. McClean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and whether *Patterson* should be applied retroactively in this action.

I

Kenneth D. Jackson ("Jackson"), Stella Jo Soderblom ("Soderblom"), and Lannie D. Moore ("Moore") bring this suit against GTE Directories Service Corporation ("GTE Service"),[1] alleging claims pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Jackson, an African-American male, has been employed by GTE Service since 1980.[2] In December 1980 Jackson was promoted from his position as a collector in the Commercial Collections Department to the position of Collections Supervisor. In 1983 Jackson's job title was changed to Credit Supervisor. As Credit Supervisor, Jackson had the managerial duty of supervising approximately eight employees.

As of January 1, 1984 Moore, an African-American male, was employed by GTE Service as Customer Credit Manager in the collections department. Moore was Jackson's immediate supervisor. In July 1985 Moore became head of GTE Service's Commercial Credit Group, a unit specializing in commercial collections from third parties. Pierre St. Germain ("St. Germain") succeeded Moore as manager of the Commercial Collections Department and thereby became Jackson's supervisor. In November 1985 St. Germain completed a performance plan and appraisal of Jackson, rating Jackson's performance as a "5", the lowest rating on a five-point scale. Shortly thereafter, Jackson was stripped of his managerial responsibilities and reassigned to the Commercial Credit Group as a collector, where he once again reported directly to Moore.

Unsatisfied with the November 1985 appraisal,[3] Jackson requested that Moore conduct an independent evaluation. Moore did so in December 1985, assigning Jackson a rating of "4" on the five-point scale. In October 1986 Moore conducted an additional performance appraisal of Jackson. Moore initially gave Jackson a rating of "4", but changed the rating to a "5" at the direction of Kenneth Long ("Long"), Moore's supervisor. Jackson refused to sign the October 1986 performance appraisal. Moore informed Long of Jackson's refusal to sign, and was told to terminate Jackson if he persisted in his refusal. Moore subsequently determined that an employee could not be discharged for failing to sign a performance appraisal, and so informed Long. Long terminated Moore the same day. Following Moore's firing, Jackson was transferred from his position at the Commercial Credit Group to the position of collector in recovery operations of Commercial Collections Department.

Soderblom, a caucasian female, replaced Moore as manager of the Commercial Cred-

1. Plaintiffs initially brought suit against GTE Directories Corporation, GTE Service, and GTE Corporation. GTE Service is the sole remaining defendant.

2. GTE Service was actually formed on January 1, 1984. GTE MPSJ, Green Aff. at 1. It is

undisputed, however, that Jackson was employed by a GTE entity prior to that date. For sake of clarity, the court refers to both as GTE Service.

3. Jackson disagreed with and refused to sign this appraisal.

it Group in December 1986. She avers that Long had initially contacted her regarding Moore's position in September 1986. Long allegedly made numerous age and race-related comments to Soderblom about Moore and Jackson. Soderblom initially informed Long that she did not want Moore's position. In October 1986 Long asked Soderblom to review Moore's performance appraisal of Jackson, allegedly telling her to "get the goods" on Jackson. According to Soderblom, Long threatened to discipline her if she did not uncover information that would allow Long to "get rid of" Jackson. In November 1986 Soderblom was reprimanded by Long for not completing her "audit" of Jackson. Soderblom was terminated by Long on February 12, 1987.[4] Jackson and Moore filed claims with the Equal Employment Opportunity Commission ("EEOC") in November 1986. Soderblom filed her EEOC claim in May 1987. This action followed.

Jackson contends he was discriminated against on the basis of race with respect to his sub-par performance appraisals and subsequent demotion in November 1985 and October 1986. Jackson asserts claims under § 1981 and Title VII. Moore contends he was discriminated against on the basis of race in connection with his October 1986 discharge. Specifically, Moore asserts he was terminated in retaliation for refusing to violate Jackson's rights under § 1981. Moore asserts claims under § 1981 and Title VII. Soderblom contends she was discriminated against on the basis of race, sex, and age. She alleges there exists direct evidence of age discrimination and that she was discharged at least in part in retaliation for refusing to violate Jackson's rights under § 1981. Soderblom asserts claims under § 1981, Title VII, and the ADEA.

**4.** Soderblom was 42 years of age at the time she was terminated.

**5.** 42 U.S.C. § 1981:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and

GTE Service now moves for partial summary judgment, contending plaintiffs' claims allege only post-formation conduct and are therefore not actionable under § 1981 pursuant to the Supreme Court's recent *Patterson* decision. GTE Service further contends Jackson's Title VII claim should be dismissed because Jackson has no evidence to rebut the legitimate, nondiscriminatory reasons GTE Service offers for Jackson's demotion, and avers Soderblom's ADEA claim fails because she cannot make out a *prima facie* case of age discrimination. Plaintiffs respond that *Patterson* should not be applied retroactively, and otherwise argue that summary judgment is not appropriate.

## II

### A

The court turns first to the question whether § 1981[5] is available to remedy post-formation conduct.

In *Patterson* plaintiff filed suit in federal court alleging her employer had violated § 1981 by harassing her, failing to promote her, and ultimately discharging her because of her race. 109 S.Ct. at 2369. The district court determined that a claim for racial harassment is not actionable under § 1981 and thus withheld that portion of the case from the jury. The jury found in favor of the employer on both the failure to promote and discharge claims. On appeal the Fourth Circuit affirmed the district court's holding that a claim of racial harassment in employment is not actionable under § 1981.[6] The Supreme Court granted certiorari to consider the question. *Id.*

 shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**6.** The court of appeals also affirmed a jury instruction given by the district court. The Supreme Court determined this instruction to be in error, and vacated that portion of the court of appeals' judgment upholding the instruction. *Id.* at 2377–2379.

The Court carefully examined § 1981 and concluded that the statute by its plain terms protects two rights: (1) the right to make contracts; and (2) the right to enforce contracts. *Id.* at 2372. The right to make contracts "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." *Id.* Thus the right protected by § 1981 "to make contracts" prohibits the race-based refusal to enter into a contract with someone, as well as a racially discriminatory contract offer, but does not extend to prohibit conduct by an employer after the contract relation has been established. *Id.* at 2372, 2373. The Court recognized that such "postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contractual obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII." *Id.* at 2373.

As to the "right to enforce" contracts, the Court determined that this right "embraces protection of a legal process, and of a right of access to a legal process, that will address and resolve contract-law claims without regard to race." *Id.* Hence, the right to enforce contracts protected by § 1981 prohibits discrimination that prevents the legal access necessary to enforce contract rights, and additionally prohibits private efforts to impede access to the courts. This protection does not "extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.*

Applying these principles to the case before it, the Court held that the employee's racial harassment claims were not actionable under § 1981, but instead must be brought pursuant to Title VII. *Id.* at 2373, 2374. Recognizing the overlap between Title VII and § 1981, the Court declined to "twist the interpretation of [§ 1981]" to cover conduct "forbidden by a clearly applicable law [Title VII]." Thus, the Court adopted a construction of § 1981 that preserves the "detailed and well-crafted procedures for conciliation and resolution of Title VII claims," without sacrifice of "any significant coverage of civil rights laws." *Id.* at 2374, 2375.

GTE Service contends plaintiffs' § 1981 claims all rest on post-formation conduct and thus do not survive *Patterson.* Plaintiffs respond that *Patterson* should not be applied retroactively and that *Patterson* does not bar their demotion and retaliatory discharge claims regardless. The court considers each of these contentions in turn.

1

Several courts have considered whether *Patterson* should be applied retroactively to cases pending before them and a substantial majority have concluded that it should.[7] The Fifth Circuit recently applied *Patterson* retroactively in *Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174, 1175–77 (5th Cir.1990). The court now turns to the facts of the instant case to determine whether *Patterson* should be applied retroactively here.

 The general rule is that a court will apply an intervening decision to all cases not final on the day the intervening decision is rendered. 1B J. Moore, *Moore's Federal Practice,* ¶ 0.402 at 82 (1988); *see Carroll,* 891 F.2d at 1175 (general rule that appellate court will apply law in effect at time of decision). To decide whether to depart from this rule, a court must consider in a particular case the factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under the *Huson* formulation a court first determines whether the intervening decision establishes a new principle of law. *Id.* at 106, 92 S.Ct. at 355; *Carroll,* 891 F.2d at 1176. Second, the court considers the prior

---

7. *E.g., Brackshaw v. Miles, Inc.,* 723 F.Supp. 60, 61–63 (N.D.Ill.1989); *Morgan v. Kansas City Area Transp. Auth.,* 720 F.Supp. 758, 759–61 (W.D.Mo.1989); *Hall v. County of Cook, Ill.,* 719 F.Supp. 721, 725 n. 3 (N.D.Ill.1989); *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366, 1368 (D.Colo.1989); *but see Gillespie v. First Interstate Bank of Wis. S.E.,* 717 F.Supp. 649, 651 n. 2 (E.D.Wis.1989) (refusing to apply *Patterson* to case already tried at time decision was announced).

history of the rule in question, its purposes and effects, and whether retrospective application will further or retard its operation. *Huson,* 404 U.S. at 106, 107, 92 S.Ct. at 355, 355; *Carroll,* 891 F.2d at 1176. Finally, the court considers the equities of the case before it, and whether injustice or hardship will result if a decision is applied retroactively. *Huson,* 404 U.S. at 107, 92 S.Ct. at 355; *Carroll,* 891 F.2d at 1176, 1177.

▪ The *Carroll* court determined that *Patterson* established a new principle of law in this circuit and further found no support for a finding of nonretroactivity in the second *Huson* factor. 891 F.2d at 1176. These are not case-specific holdings and they accordingly bind this court's analysis of the retroactivity question.

The third factor, which considers whether it would be equitable to apply an intervening decision, does turn upon the individual facts. This court therefore decides the issue guided, but not bound, by *Carroll.*

▪ Plaintiffs contend that if this court applies *Patterson* retroactively, and additionally holds that *Patterson* bars plaintiffs' § 1981 claims, a substantial injustice will occur because Jackson will be barred from asserting claims stemming from his November 1985 demotion.[8] The court expresses no opinion on the issue whether the claims flowing from the November 1985 incident would in fact be barred under Title VII, but holds that there is no basis for a holding of nonretroactivity even if such claims are barred. Assuming the claims stemming from the November 1985 inci-

dent are barred, Jackson may still proceed under Title VII with theories of recovery that arose no earlier than 300 days prior to the date he filed his charge with the EEOC. Thus the 300–day limitations period would not bar claims flowing from his "official demotion" in October 1986 and events thereafter. Jackson will still have means of redress. Moreover, Jackson is but one of the plaintiffs herein. Accepting plaintiffs' theory that Moore and Soderblom were subjected to unlawful treatment in October 1986, there is no bar to their Title VII claims. Plaintiffs have not demonstrated how a holding of retroactivity would result in any undue hardship or injustice to them. On the other hand, a holding of nonretroactivity may subject GTE Service to the prospect of paying damages for conduct the Supreme Court has determined is not actionable under § 1981. This itself is an unjust result. *See Carroll,* 891 F.2d at 1177.

2

The court next considers whether the § 1981 claims plaintiffs assert remain actionable in light of *Patterson.*

It is beyond dispute that racial harassment claims are no longer actionable under § 1981. *Patterson,* 109 S.Ct. at 2373–2377.[9] Plaintiffs contend, however, that their claims—specifically those alleging discriminatory demotion and retaliatory discharge—are not allegations of racial harassment and hence survive *Patterson.*

The court turns first to Moore's and Soderblom's § 1981 claims. Moore alleges he

---

8. Jackson originally proceeded under the theory that his unlawful demotion occurred on October 20, 1986, the day he was "officially" demoted to the position of collector by GTE Service. In response to GTE Service's summary judgment motion, Jackson has emphasized that he was *actually* demoted in November 1985 when he was stripped of his managerial authority, arguing that the October 1986 "official" demotion was only the final step in the discriminatory process. The dates are relevant because Jackson did not file a charge of discrimination with the Equal Employment Opportunity Commission until November 10, 1986, almost a year after his actual demotion in November 1985. Pursuant to 42 U.S.C. § 2000e–5(e), Jackson had 300 days after the act of discrimination occurred to file a charge with the EEOC, lest his Title VII action be time-barred. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–

398, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982).

9. *See also Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 479 (6th Cir.1989); *Mathews v. Freedman,* 882 F.2d 83, 85 (3d Cir. 1989); *Lynch v. Belden and Co., Inc.,* 882 F.2d 262, 267 (7th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1134, 107 L.Ed.2d 1040 (1990); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 (7th Cir.1989); *Crader v. Concordia College,* 724 F.Supp. 558, 562–63 (N.D.Ill.1989); *Mathis v. Boeing Military Airplane Co.,* 719 F.Supp. 991, 993–94 (D.Kan.1989); *Sofferin v. American Airlines, Inc.,* 717 F.Supp. 597, 599 (N.D.Ill.1989); *Washington v. Lake County, Ill.,* 717 F.Supp. 1310, 1312 (N.D.Ill.1989); *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49, 50–51 (D.D.C.1989).

was discharged in retaliation for his refusal to fire Jackson. Moore contends Long had a discriminatory attitude towards African–Americans, and based his decision to fire Jackson on Jackson's race. Soderblom alleges she was also discharged in retaliation for her refusal to accede to Long's discriminatory attempts to discharge Jackson.

■ Prior to *Patterson*, it was clear that retaliatory discharge claims were actionable under § 1981, at least in the Fifth Circuit. *See Irby v. Sullivan*, 737 F.2d 1418, 1429–30 (5th Cir.1984) (retaliation claim actionable under § 1981); *Goff v. Continental Oil Co.*, 678 F.2d 593, 597–599 (5th Cir.1982) (same). While it is unclear whether Bloom's and Soderblom's claims fall within the interpretation of § 1981 followed in *Irby* and *Goff,* the continuing validity of these precedents has been called into question by *Patterson*. *See Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989) (questioning whether *Irby* and *Goff* survive *Patterson* ). The court's examination of the retaliatory discharge claims asserted in the present case leads to the conclusion that neither Moore nor Soderblom presents a viable § 1981 action.

It is undisputed that both Moore and Soderblom complain of conduct that occurred *after* each had entered into a contractual relationship with GTE Service. While some courts have questioned whether a post-formation retaliation claim may survive *Patterson* on the theory that the retaliation interferes with the employee's right to make contracts, *see Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312–13 (7th Cir.1989); *English v. General Dev. Corp.*, 717 F.Supp. 628, 632–633 (N.D.Ill.1989), and others have held such claims actionable as an extension of the right to enforce contracts, *see Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366, 1368, 1369 (D.Colo. 1989), neither of these constructions is faithful to the construction of § 1981 given by the Court in *Patterson*. The Court has

made clear that the "right to make contracts does not extend … to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Patterson*, 109 S.Ct. at 2373. A holding that a retaliatory discharge claim, which by its nature is dependent upon post-formation conduct, remains actionable under § 1981 ignores the Court's teaching. Moreover, allowing a retaliatory discharge claim to proceed under § 1981 undercuts the remedial scheme provided for by Congress in Title VII. 42 U.S.C. § 2000e–3(a) expressly provides a remedy for a party subject to retaliation for opposing discriminatory employment practices. Allowing plaintiffs to pursue retaliation claims under § 1981 would render the "detailed procedures of Title VII … a dead letter." *Patterson*, 109 S.Ct. at 2375. The right to make contracts simply does not extend to the retaliatory discharge claims asserted in the present case. *See, e.g., Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.1990) (post-formation retaliatory conduct presents no cause of action under § 1981); *Overby v. Chevron U.S.A., Inc.*, 884 F.2d 470, 473 (9th Cir.1989) (retaliatory discharge claim does not implicate right to make contracts); *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989) (same).[10]

The right to enforce contracts as construed in *Patterson* is equally unavailing to Moore and Soderblom. The Court emphasized in *Patterson* that the right to enforce contracts extends only to prohibit "conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." 109 S.Ct. at 2373. An employer's retaliatory conduct "falls under § 1981 only when the employer aims to prevent or discourage an employee from using legal process to enforce a contract right." *Sher-*

---

**10.** The court declines to follow the lead of courts that have refused to apply *Patterson* to a § 1981 discharge case. *See, e.g., Padilla v. United Air Lines*, 716 F.Supp. 485, 490 (D.Colo.1989). This reading of *Patterson* creates an exception that would swallow up the interpretation the

*Patterson* Court gives § 1981. If a discharged employee has been subject to unlawful discrimination unrelated to the original contractual relationship, the employee's exclusive means of redress is found in Title VII.

*man,* 891 F.2d at 1535. Section 1981 does not apply when an employee asserts a retaliatory discharge claim based on discrimination unrelated to specific contract rights. *Id.* Here, Moore and Soderblom offer no evidence that their access to legal process has been obstructed. Nor do they allege discrimination in enforcing any specific contract right. Moore's and Soderblom's claims rest solely on alleged discrimination unrelated to specific contract rights or the ability to enforce those rights through access to the legal process. As such, their claims are not actionable under § 1981. *See id.; Overby,* 884 F.2d at 473; *Williams,* 716 F.Supp. at 51, 52.[11]

■ Jackson's § 1981 claim does not rest on allegations of retaliatory discharge, but instead focuses on Jackson's demotion. Jackson contends GTE Service discriminated against him on the basis of race in connection with Jackson's performance appraisals and subsequent demotion. Realizing that he complains only of post-formation conduct barred by *Patterson, see Alexander v. New York Medical College,* 721 F.Supp. 587, 588 (S.D.N.Y.1989) (demotion not actionable under § 1981), Jackson analogises his situation to one where an employee is denied a *promotion* because of race, an event the Supreme Court has indicated may give rise to a § 1981 action. Whether a promotion claim is actionable under § 1981 depends upon the nature of the change in position. *Patterson,* 109 S.Ct. at 2377. The nature of the change must involve the opportunity to enter into a new contract with the employer. *Id.* A promotion claim is actionable only where the opportunity is present to enter into a "new and distinct" relation with the employer. *Id.*

■ The court has little hesitancy in concluding Jackson's demotion claim does not fall within the ambit of viable § 1981 claims left in the wake of *Patterson.* A demotion claim is demonstrably *not* a claim that rests on an opportunity for an employee to enter into a new and distinct relation with an employer. A demoted employee is not complaining of discrimination in the making of a new contract, but is instead urging that he was discriminated against in his previous position. Unless the employee can demonstrate that he was forced to enter into a racially discriminatory contract *following* his demotion, there is no basis for circumventing *Patterson* to create an additional § 1981 action. *See Patterson v. McLean Credit Union,* 729 F.Supp. 35, 36 (M.D.N.C.1990) (district court opinion following remand) (promotion claim barred as not amounting to "an opportunity for a new and distinct relation" between plaintiff and her employer). Heeding the Supreme Court's admonition that a lower court "should not strain in an undue manner the language of § 1981," *Patterson,* 109 S.Ct. at 2377, the court concludes a demotion claim is not actionable under § 1981. *See Alexander,* 721 F.Supp. at 588; *Jordan,* 716 F.Supp. at 1368.[12]

Each of plaintiffs' claims rests on post-formation conduct that *Patterson* teaches is no longer actionable under § 1981. Summary judgment on the § 1981 claims is therefore appropriate.

**B**

■ The court next considers whether summary judgment is proper as to Jackson's Title VII claim.

It is sufficient to note that whether Jackson proceeds pursuant to the direct evidence standard recently announced in *Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (sex dis-

---

**11.** *See also Alexander v. New York Medical College,* 721 F.Supp. 587, 588 & n. 5 (S.D.N.Y.1989) (*Patterson* precludes § 1981 claims for retaliatory discharge); *Morgan,* 720 F.Supp. at 760 n. 2 (discharge claims not actionable under § 1981); *Hall,* 719 F.Supp. at 722–25 (same); *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552, 553–54 (S.D.Tex.1989) (same); *but see Birdwhistle v. Kansas Power and Light Co.,* 723 F.Supp. 570, 575 (D.Kan.1989) (discharge claim remains actionable under § 1981 because discharge is directly related to contract enforcement); *Booth v. Terminex Int'l, Inc.,* 722 F.Supp. 675, 676 (D.Kan.1989) (same).

**12.** To the extent other courts have suggested a different result, *see Gamboa v. Washington,* 716 F.Supp. 353, 359 (N.D.Ill.1989), the court respectfully disagrees.

crimination case), or alternatively relies on the established proof regimen of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (race discrimination case), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (sex discrimination case), summary judgment is not appropriate. The affidavits of Moore, Soderblom, and Jackson, as well as the deposition transcripts and other materials on file, demonstrate the existence of a genuine issue of material fact regarding the reasons for Jackson's demotion. A reasonable jury could conclude on the basis of the summary judgment record that Jackson was demoted because of his race. This is sufficient to create a genuine issue for trial and therefore precludes summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).[13]

## C

The court finally considers Soderblom's claim under the ADEA. GTE Service contends Soderblom has failed to establish a *prima facie* case of age discrimination. Soderblom responds that she has presented evidence sufficient to establish a *prima facie* case, and that GTE Service has failed to carry its burden of articulating a legitimate business reason for Soderblom's termination.

■■■ A plaintiff proceeding under the ADEA may establish a *prima facie* case of age discrimination through one of three methods: by direct evidence of discriminatory intent; by meeting the *McDonnell/Burdine* test applicable to Title VII cases; or through statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).[14] Direct evidence of discrimina-

tion is evidence which, if believed, would prove the existence of a fact without inference or presumption. *Id.* at 581, 582. Once a plaintiff produces direct evidence of discrimination, an employer must prove that the same employment decision would have been made absent any discriminatory intent. *Id.* at 582; *cf. Price Waterhouse*, 109 S.Ct. at 1795 (where Title VII plaintiff proves gender played a motivating part in employment decision, employer avoids liability only by proving it would have made the same employment decision without regard to plaintiff's gender).

■■■ The evidence adduced by Soderblom falls short of that required to constitute direct evidence of discriminatory intent. Soderblom asserts that in September 1986 Long informed her that Moore was "over the hill" and no longer capable of performing his job duties adequately. Ex. 4, Soderblom Aff. at 1. Soderblom contends Long repeated this general statement to her as many as two or three times a day over the next ten days. *Id.* at 2. Soderblom further asserts she questioned Long about these statements and was informed Moore was a "has been" whom Long had assumed was over 40 years old.[15] *Id.* Finally, Soderblom avers Long reiterated in October 1986 that Moore was "too old to do the job" and "over the hill." *Id.* at 3. While this evidence may be sufficient to constitute direct evidence of discriminatory intent as to Moore, it does not constitute direct evidence of discriminatory intent as to Soderblom. Even if a jury believed the evidence offered by Soderblom, the jury would still be required to infer discriminatory intent as that intent pertains to Soderblom from the evidence of intent as related to Moore. Because a necessary inference is required, the evidence does not consti-

---

**13.** GTE Service also contends Jackson's Title VII claim is time-barred because the acts of which Jackson complains occurred in November 1985 yet Jackson did not file a charge of discrimination with the EEOC until November 1986. A factual dispute exists as to when Jackson was actually demoted. In some cases, moreover, a Title VII plaintiff may rely on a continuing violation theory. *See Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 979–82 (5th Cir.

1983). GTE Service may seek summary judgment on this ground if it can address these factors that would preclude summary judgment.

**14.** Soderblom presents no statistical evidence. The court therefore does not consider this method of proof.

**15.** Moore is five years younger than Soderblom.

tute direct evidence. *See Carter*, 870 F.2d at 582.

■ Where, as here, there is no direct evidence of age discrimination against Soderblom, the evidentiary procedure for Title VII cases applies. *Burdine*, 450 U.S. at 248, 253–56, 101 S.Ct. at 1089, 1093–95. First, an employee must make out a *prima facie* case of age discrimination. A *prima facie* case consists of evidence that a plaintiff: (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; (4) was replaced by someone outside the protected class; or (5) replaced by someone younger; or (6) show otherwise that her discharge was because of age.[16] *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504–05 (5th Cir.1988) (citing *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 565 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)). Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate business reason for the employee's termination. *Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 750 (5th Cir.1989); *Bienkowski*, 851 F.2d at 1505. Once a legitimate reason is articulated, it is incumbent upon the plaintiff to prove that the articulated reason is merely a pretext for unlawful discrimination. *Burns*, 890 F.2d at 750. The plaintiff at all times retains the burden of persuading the factfinder that impermissible discrimination motivated the termination. *Id.*

■ GTE Service does not contest the existence of the first three factors necessary to Soderblom's *prima facie* case. Soderblom in turn concedes that she cannot satisfy element four or element five because she was 42 years old at the time of her termination and she was replaced by a 45–year old male. The dispositive issue therefore is whether Soderblom has presented evidence sufficient to create a fact question as to whether her discharge was "otherwise because of her age." The court concludes she has. The evidence of age discrimination Soderblom produces, while not sufficient to constitute direct evidence of discriminatory intent, is sufficient to enable a jury to infer the existence of discriminatory intent.[17] *See Hansard v. Pepsi–Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1465–66 (5th Cir.1988) (accumulation of circumstantial evidence of age discrimination sufficient to support discrimination finding), *cert. denied*, —— U.S. ——, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989); *Bienkowski*, 851 F.2d at 1507, 1508 (indirect comments about employee's age possibly probative of discriminatory intent). Evidence that Long made the statements Soderblom attributes to him would enable the jury to infer the necessary discriminatory intent. These statements are sufficient to raise a genuine issue of material fact for trial.[18]

Because the court concludes Soderblom has presented evidence sufficient to establish a *prima facie* case of age discrimination, the burden now shifts to GTE Service

---

**16.** The last three factors are generally treated on an alternative basis; that is, a plaintiff need only establish one of the three. *See, e.g., Dreyer v. ARCO Chemical Co., Div. of Atlantic Richfield Co.*, 801 F.2d 651, 654 (3d Cir.1986) (treating last three factors as one), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).

**17.** While it may appear anomalous to infer that an employee who is replaced by an *older* employee has been subjected to age discrimination, such an inference is permissible. The ADEA prohibits employers from utilizing age as a determinative factor in employment decisions. *E.g., Burns*, 890 F.2d at 750. An employer's decision is not immunized from liability solely because the employer replaces the terminated employee with an employee within the protect-

ed class or an older employee. *See McCuen v. Home Ins. Co.*, 633 F.2d 1150, 1151–52 (5th Cir. Unit B 1981). If the plaintiff can establish her discharge was "because of age" and otherwise satisfies the elements of a *prima facie* case, she may proceed with her claim. *See id.*

**18.** Contrary to defendant's assertions, Soderblom's evidence does not consist solely of isolated instances of "stray remarks in the workplace." Ds. Reply at 13. The evidence instead consists of numerous remarks made over a period of time as many as two or three times a day. These are not the "isolated and ambiguous statements" referred to in *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989), nor are they akin to the superfluous remark at issue in *Carter*, 870 F.2d at 582.

to articulate a legitimate business reason for the termination. GTE Service offers no evidence of a reason for Soderblom's discharge. Summary judgment is therefore not appropriate on Soderblom's ADEA claim.

### III

GTE Service's motion for summary judgment is granted as to plaintiffs' § 1981 claims, denied as to Jackson's Title VII claim, and denied as to Soderblom's ADEA claim.

SO ORDERED.